**William C. DYESS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–548.**

United States Court of Veterans Appeals.

Argued June 12, 1991.

Decided Sept. 5, 1991.

As Amended Sept. 20, 1991.

Rick Surratt (Non–Attorney Practitioner), for appellant.

Jacqueline E. Monroe, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before MANKIN, IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge, filed the opinion of the Court, in which IVERS, Associate Judge, joined. MANKIN, Associate Judge, concurring in part and dissenting in part, filed a separate opinion.

STEINBERG, Associate Judge:

The appellant veteran here seeks an increased rating for his 10–percent–rated service-connected disability of pes planus (flat feet) and service connection for a right-knee condition as·secondary to that disability. The Court, retaining jurisdiction, remands both matters to the Board of Veterans' Appeals (BVA or Board) for readjudication in accordance with this decision.

## I. BACKGROUND

The veteran, William C. Dyess, served in the Army from November 25, 1940, to September 15, 1941. On July 27, 1941, he was hospitalized for painful feet. On July 28, 1941, a diagnosis of "pes planus, third degree, bilateral, longitudinal and transverse arches, with mild pronation" was made. R. at 16. On April 24, 1946, he received a 10–percent rating from a Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) rating board for "pes planus third degree, bilateral, symptomatic." R. at 29. His rating was reviewed by the VARO later in 1946 after a change in the rating schedule for evaluating disabilities. At a September 14, 1946, VA examination for flat feet and back pain, the examiner noted that "the pes planus is [a] well established defect and likely sufficient to cause an ortho-static defect which likely aggravates the musculo-skeletal system causing the back pain." R. at 40. On October 17, 1946, the RO continued the 10–percent rating for flat feet and denied service connection for back problems. R. at 41.

On June 10, 1988, the veteran requested to have his claim reopened, submitting a letter stating that he believed his foot condition had caused him to have knee and back problems. (The veteran has not appealed to the Court on the back condition.) At a VA examination on October 4, 1988, the examining physician, a general surgeon, made a diagnosis of "Pes Planus", "Possible Internal Derangement R. Knee", "[Possible] Medial Compartment Syndrome", and "LBP [lower back pain]—etiology undetermined." R. at 55. The physician described the pes planus as "moderate", with the right worse than the left. R. at 54. He also noted that he was "unable to relate pes planus [and] R. Knee [and] LB [lower back] problem." R. at 55. He recommended that the veteran be seen by an "orthopedic" specialist. R. at 55.

Apparently sometime between October 6, 1988, and October 21, 1988, the veteran was seen by a podiatrist, Dr. Fettig, on referral from the VA. Dr. Fettig noted the following:

PHYSICAL EXAMINATION:
1. ....
2. Biomechanically significant forefoot valgus with a plantar-flexed first ray complex accentuating the instability of the midfoot fault in later midstance phase of gait. Also noted significant

limb length discrepancy of a short left side accentuating the excessive pronation on the right abnormal stress noted on the knee complex on ambulation.

3. Gait analysis revealed a significant medial column displacement with everted rearfoot position with excessive midstance pronation noted with mal-alignment of the knee joint complex in late midstance phase.

ASSESSMENT:

1. Chronic right knee and low back problem secondary to poor foot mechanics.

2. A rigid forefoot valgus with an uncompensated rearfoot varus accentuating the excessive in gait.

3. Painful pronated gait accentuated by the poor foot mechanics.

4. X-ray findings, multiple views reveal bilateral feet of degenerative findings of a [sic] heel spur formations left greater than a [sic] right as well as significant calcifications of the achilles attachment as well as other degenerative findings in the midfoot fault complex.

R. at 56–57. He also stated that the prognosis was "good" if a treatment plan of "anatomical functional orthotics" and shoes "to help support the limb length discrepancy" was followed. *Id.* at 57. On March 13, 1989, the RO rating board concluded that "[t]he evidence does not warrant a change in the [10–percent rating for the] veteran's SC [service-connected] pes planus. The evidence does not show SC for a knee or back condition." R. at 59. In the VA's Statement of the Case issued after the veteran filed his Notice of Disagreement, the following was given as the reason for the adverse rating decision: "The findings on VA examination are commensurate with a 10–percent evaluation for the bilateral pes plan[us]. The examining physician was unable to relate the pes plan[us] to the veteran's right knee and low back problems." R. at 67.

In his June 27, 1989, substantive appeal to the BVA, the veteran stated that after he is on his feet for a period of "30 minutes [his feet] begin to swell and hurt". R. at

68. He also stated that the VA general surgeon who saw him on October 4, 1988, told him "he could not make a fair decision, so he sent me to Dr. Fettig on Oct. 6, 1988." The veteran acknowledged that his right knee and back problems "did not show up until 10–15 years ago". He stated that "according to Dr. Fettig the right knee and back problem is due to misalignment of [the] right knee and complete right side including back because of the flat feet." R. at 68.

In a March 5, 1990, decision, the BVA denied entitlement to service connection for a knee and back disability secondary to service-connected bilateral pes planus and denied an increased rating for the pes planus. *William C. Dyess*, BVA 90–06793 (Mar. 5, 1990). As to the knee, the BVA stated:

> [P]ost service clinical evidence did not reveal any gait impairment prior to [1988], and it would be merely speculative to assume that the service-connected pes planus played a material role in the development of a right knee disability or chronic back disability. While we have considered the opinion by a podiatrist regarding an etiological relationship between the service-connected disability and the claimed disabilities, this has not been supported by the overall clinical record, and an opinion by another physician is to the contrary.

*Id.* at 5. As to the pes planus, the BVA stated that on VA examination in October 1988 the pes planus

> was clinically described as only of moderate degree. Although he had some pronation of the feet and impaired gait on podiatry examination that month, it is our opinion that, at least some of his gait impairment may be attributed to degenerative changes in his feet and other conditions for which service connection is not in effect, and therefore may not be considered in evaluation of this claim.

*Ibid.* The BVA found that a chronic knee disability was "not causally or etiologically related to the appellant's service-connected bilateral pes planus" and that "[s]ymptomatology reasonably attributable to his pes

planus is of no more than moderate degree." *Id.* at 6.

## II. CONTENTIONS

A timely appeal to this Court followed under 38 U.S.C. §§ 7252(a), 7266 (formerly §§ 4052, 4066). The appellant argues that "[b]ecause the evidence clearly preponderates in favor of the proposition that the veteran's right knee disability is secondary to his service-connected pes planus, the BVA's decision was not in accordance with the requirement in law that, if a veteran's claim is established by a fair preponderance of the evidence, it will be granted." Br. at 9. He argues that the BVA's decision while it "did at least mention the evidence favorable to the veteran's claim was erroneous because it simply rejected, without any apparent valid reason, those portions of the evidence which supported the veteran's claim." Br. at 10.

He maintains that the VA general surgeon, in stating that he was unable to relate the pes planus to the knee condition, did not opine that there was no connection; instead, he referred the veteran to a specialist more qualified to address the question, conceding "that he was unqualified to render an opinion and was doubtful about his inability to connect the two conditions." Br. at 11. Hence, the appellant maintains, the general surgeon's opinion weighs very little, if at all, against the veteran. In contrast, the appellant argues, the podiatrist "provided a comprehensive analysis of the veteran's problems" and "concluded, unequivocally, that the pes planus caused the right knee problem." Br. at 11–12. He also maintains that the podiatrist's opinion is supported by the 1946 medical examination which stated that the veteran's foot problem was likely to aggravate the musculoskeletal system, and is consistent with recognized medical principles.

As to the BVA's reliance on its finding that no gait disturbance was noted until 1988, the appellant maintains that when the gait disturbance first appeared is immaterial and not a ground for concluding that it would be speculation "to assume that the pes planus played a role in the development of the right knee disability. A competent specialist of [VA's] own choosing observed, described, [and] diagnosed pes planus with resulting gait disturbance and secondary knee problems. To rely on the opinion the [VA] itself solicited would not be speculative." Br. at 13. He maintains further that the podiatrist's findings are not refuted by the overall clinical record, as found by the BVA, and that there is nothing in the record to weigh against the podiatrist's opinion (including the general surgeon's opinion) and, thus, that the BVA's decision is clearly contrary to the great weight of the evidence and the law. Br. at 14.

The appellant also argues that the BVA's finding that the requirements for a 30–percent rating for his bilateral pes planus were not met is erroneous. Br. at 15. He contends that the podiatrist's report, along with the veteran's statements to examiners and in his substantive appeal that (1) he could not stay on his feet for more than one and a half to two hours, (2) his feet began to hurt and swell after 30 minutes of standing, and (3) he terminated his employment because of painful feet all establish that the veteran has a severely disabling foot condition, not moderate as found by the BVA. Br. at 15–16. He contends that the BVA was in error in giving more weight to the general surgeon's "moderate" finding than the podiatrist's finding because the general surgeon made no specific finding regarding foot abnormalities. The appellant also contends that the BVA erred in finding part of the veteran's foot disability (degenerative changes) non-service connected. Br. at 17. He maintains that degenerative changes are a "common manifestation of pes planus" and that the record "provides no apparent reason for [the] BVA to have considered degenerative changes and the other unspecified conditions of the feet nonservice-connected, and no justification was provided". Br. at 17. He also maintains that the BVA was in error in basing its evaluation, in part, on the podiatrist's prognosis. He contends that "[a] prognosis, while helpful to an understanding of the likely future course of a veteran's disability, is not a valid basis

for assigning a current evaluation." Br. at 19.

The Secretary moves that the case be remanded to the BVA because: (1) the evidence of record is incomplete and ambiguous and additional development of the evidence is necessary; (2) the BVA did not provide sufficient "reasons or bases" under 38 U.S.C. § 7104(d)(1) (formerly § 4004) for the Court to conduct meaningful analysis; and (3) the BVA did not adequately explain the applicability of the benefit-of-the-doubt doctrine under 38 U.S.C. § 5107(b) (formerly § 3007). Br. at 6.

First, the Secretary contends that additional development of the evidence is necessary, particularly with respect to the veteran's claimed knee disability because the evidence of record fails to establish that a knee disability exists. He argues that the general surgeon did not make a definite diagnosis of a knee disability, but rather found that there was possible internal derangement or medial compartment syndrome. He also maintains that no definite disability was identified by the podiatrist, and he contends that there is no specific evidence that the podiatrist examined the veteran's knee. Br. at 6–7.

Further, the Secretary argues that even if it is accepted that the veteran has a knee disability the medical opinions of both the general surgeon and the podiatrist are ambiguous as to whether such a disability is secondary to the service-connected foot disorder. He contends that it is unclear whether the general surgeon's statement that he was unable to relate the foot disability to the knee problem should be interpreted as a negative opinion or as an indication that the surgeon lacked the expertise necessary to assess the relationship. As for the podiatrist's statement that the knee problem was secondary to poor foot mechanics, the Secretary maintains that it is ambiguous because it is unclear whether the podiatrist was referring to the flat feet or the degenerative changes of the feet or the shorter left leg. VA contends that the podiatrist's opinion contains no explicit opinion as to whether the flat feet caused the knee condition and that this case, like

*Green v. Derwinski*, 1 Vet.App. 121 (1991), should be remanded because the medical opinions raise more questions than they answer. The case should also be remanded, VA argues, because the RO failed to have the veteran examined by an orthopedic specialist as requested by the general surgeon. The Secretary contends that the record is also incomplete because evidence of treatment by Dr. Whipp, a private physician, was not obtained. Br. at 8–10.

Second, the Secretary maintains that the BVA provided an inadequate statement of reasons or bases, failing to address clearly the podiatrist's report and how the findings in the report bore on the issue before it. VA contends that the BVA did not provide any explanation for its conclusion that the veteran's gait problems were due to degenerative changes and other problems of the feet other than flat feet. This BVA medical conclusion, according to the Secretary, is not in accordance with *Murphy v. Derwinski*, 1 Vet.App. 78 (1990), and *Colvin v. Derwinski*, 1 Vet.App. 171 (1991). VA also contends that the inadequacy of the reasons or bases is shown by the appellant's assertion that the BVA arbitrarily rejected, without explanation, evidence favorable to the veteran. Br. at 11–12.

Third, the Secretary maintains that the BVA failed to address adequately the applicability of the benefit-of-the-doubt doctrine and should have provided a discussion as to how the evidence in the case was weighed and what was the preponderance of negative evidence that resulted in denial of the claim. Br. at 13.

In response, the appellant maintains that the medical evidence in this case was adequate for rating purposes and that the Secretary has not supported his allegation that the evidence is insufficient for rating purposes. Opposition at 5. He contends that from a practical standpoint it is inconsequential that the veteran was referred to a podiatrist rather than an orthopedic specialist. He also argues that it was not mandatory that the initial examiner's suggestion that the veteran be referred to an orthopedic specialist be followed; and that the issue of adequacy of the evidence is not

an issue which is properly before the Court because the appellant has not questioned the adequacy of the evidence and the Secretary cannot seek review of a BVA decision. *Id.* at 6, 10. The appellant contends that the Secretary, in effect, is seeking to appeal from the BVA decision by alleging that the BVA "erred in not finding the evidence inadequate for rating purposes on the issue of service connection for the knee disability." *Id.* at 10. He maintains that the time for the Secretary to determine the evidence to be inadequate has passed and that he should not be allowed to "escape the conclusions compelled by the evidence he determined adequate" at the time the case was before the agency of original jurisdiction. *Ibid.* He contends that "[i]t is the veteran who is the aggrieved party and the veteran whose place it is to seek specific remedies." *Ibid.* In conclusion, he argues that "the reasons for denial need not be any more specific" and that this case has already been substantially delayed to accommodate the Secretary (one 45–day extension and one 30–day extension), and there "should be no further delay at the veteran's expense." Opposition at 11.

In a Supplemental Memorandum requested by the Court, the appellant argues that reversal is appropriate here because the evidence is in the veteran's favor (a prima facie case) and is unrebutted by VA. He cites to Social Security cases in which benefits were ordered to be granted where a claimant's testimony or a physician's opinion that favors the claimant is unrebutted by the Secretary of Health and Human Services. He specifically cites *Varney v. Secretary of Health and Human Services,* 859 F.2d 1396 (9th Cir.1988), which, he states, held that where the record is complete and dispositive, remand to the agency to allow it to make findings on the evidence will not be made. Supp.Memo at 7. He contends that a similar holding should be made here because the fact that additional evidence was not sought by the BVA constituted an implicit acceptance of the veteran's evidence as "competent and credible." *Ibid.* VA responds by arguing, as above, that the evidence in this case is ambiguous, is incomplete, and raises unresolved issues.

He contends that the evidence does not establish a prima facie claim to entitlement which, if unrebutted, would warrant reversal of the BVA decision.

### III. ANALYSIS

The issues here are whether the case will be remanded for procedural deficiencies in the BVA's decision or reversed on the basis of clear error in fact finding. Although the appellant has made impressive arguments as to the BVA having committed clear error on each claim, the Court concludes that a remand rather than reversal is called for on each issue.

### A. Service Connection for Knee Condition

▇ In order to prevail in his contention that his right-knee condition is secondary to his service-connected bilateral pes planus, the appellant must show that the knee condition "is primarily due to or the result of" the service-connected pes planus. 38 C.F.R. § 3.310(a) (1990). The Court does not agree with the appellant that the present record is adequate regarding the issue of whether the veteran's knee condition (whatever that condition may be) is secondary to the service-connected pes planus. First, it is unclear whether the knee condition is a result of the pes planus or a result of the "significant limb length discrepancy of a short left side" (R. at 57) or of the degenerative changes of the veteran's left foot or some combination of the three, and, if it is a result of the limb-length discrepancy or the degenerative changes, or both, whether either or both are a result of pes planus or some other cause. Second, it is unclear what role the degenerative changes of the veteran's feet play in the veteran's problems. The Court is in doubt as to what the podiatrist meant by "poor foot mechanics" when he stated "chronic right knee ... problem secondary to poor foot mechanics." It could mean pes planus or limb-length discrepancy, or degenerative changes of the feet, or any combination of the three. The limb-length discrepancy may have been what the BVA was referring to in discussing an increased rating for pes planus when it stated that

"at least some of his gait impairment may be attributed to ... other conditions for which service connection is not in effect." *Dyess*, BVA 90–06793, at 5.

Moreover, remand as to the knee condition is required because, as the Secretary contends, "the evidence of record fails to establish that a knee disability, in fact, exists." Br. at 6. The general surgeon's diagnosis was "**Possible** Internal Derangement R. Knee" and "[Possible] Medial Compartment Syndrome." R. at 55 (emphasis added). Neither did the podiatrist identify a specific knee disability; in fact, it is not clear whether the podiatrist examined the veteran's knee or merely relied on history recounted by the veteran. R. at 56–57.

■ On the other hand, the Court agrees with the appellant that the general surgeon's opinion should weigh very little against the veteran and certainly was not an adequate basis for the BVA's adverse decision on the knee condition. The general surgeon made no explicit finding that there was no connection between pes planus and the knee condition; rather he seems to have referred the veteran to a specialist because the surgeon was unable to reach an opinion on the relationship of the two conditions. The Court also agrees with the appellant that the BVA erred in concluding that the fact that a knee problem was not clinically documented until 1988 bore on the issue of service connection. If examination establishes that the knee condition is secondary to a service-connected disability, how long after service the knee condition manifests itself is not relevant. The BVA also clearly erred in concluding that the clinical record is contrary to the podiatrist's assessment because there is no clinical record other than the service records and the general surgeon's opinion.

Hence, although the appellant is correct in pointing out many ways in which the BVA's reasoning process is deficient, there is not a sufficiently definitive evidentiary base in the record for the Court to conclude that the BVA's decision on the right knee is clearly erroneous in the absence of further development of the medical evidence and in the absence of a statement of reasons or bases for the BVA's conclusions and an analysis of the evidence in accordance with *Gilbert* [*v. Derwinski*, 1 Vet.App. 49 (1990)] and its progeny. *See, e.g., Sammarco v. Derwinski*, 1 Vet.App. 111, 112–14 (1991); *Hatlestad v. Derwinski*, 1 Vet. App. 164, 169 (1991). In order to deal with the ambiguities in the podiatrist's opinion, an independent medical examination will be required with respect to both the veteran's feet and his knee. *See Akles v. Derwinski*, 1 Vet.App. 118, 120 (1991); *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991).

### B.  Pes Planus Rating

■ Under the rating code, a 10–percent rating is required for "moderate" bilateral acquired flat feet where there is "weight-bearing line over or medial to great toe, inward bowing of the tendo achillis, [and] pain on manipulation and use of the feet". 38 C.F.R. § 4.71a, Diagnostic Code 5276 (1990). A 30–percent rating is for "severe" bilateral acquired flat feet when the condition is manifested by "objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, [and] characteristic callosities". *Ibid.* There is no 20–percent rating for acquired bilateral flat feet.

On this issue, the BVA failed to address the veteran's statements that if he stands for more than 30 minutes his feet swell and become painful, that he is unable to stay on his feet for more than one and a half to two hours, and that he had to stop working because of his foot condition. There is also no explanation of why the BVA concluded that the degree of disablement was only "moderate" without any specific facts to justify that finding or that the degenerative changes of the feet were not part of his service-connected pes planus. Most significantly, there is no discussion of the specific findings of the podiatrist regarding the veteran's foot deformities, calcification, and pain. We agree with the appellant that the prognosis should not be used to rate the veteran unless it is established

that the treatment upon which the prognosis was based has actually been successful.

On the facts here, the appellant has a strong argument that the evidence shows entitlement to more than a 10–percent rating for his bilateral flat feet. However, it is not sufficient, especially given the podiatrist's two references to degenerative findings as to the feet, quoted at page 450, *supra* (R. at 57), to warrant a clearly erroneous determination (as proposed by our dissenting colleague) because the podiatrist's opinion is, again, not definitive as to whether all of the symptoms and impairments noted are attributed to the pes planus or to some other foot problem. That issue needs to be resolved by the independent medical examination. In reaching a decision on readjudication, the BVA should be mindful of the injunction in 38 C.F.R. § 4.21 (1990) that "it is not expected that ... all cases will show all the findings specified" in the rating schedule.

### C. Other Issues

As the Secretary concedes, the BVA decision also is deficient under 38 U.S.C. § 5107(b) in containing merely a rote recitation of the benefit-of-the-doubt liturgy. *See Webster v. Derwinski,* 1 Vet.App. 155, 159–60 (1991) (citing *Gilbert,* at 57–61, and *Sammarco,* at 113–14.) The BVA must decide in the first instance whether there is "an approximate balance of evidence". *Spencer v. Derwinski,* 1 Vet.App. 125, 127 (1991). This is true as to both of the appellant's claims here. There is also a duty-to-assist issue, under 38 U.S.C. § 5107(a), in VA's failing to seek to obtain medical records from a Dr. Whipp, who apparently treated the veteran for knee and other problems. R. at 52, 56. *See Littke v. Derwinski,* 1 Vet.App. 90, 92–93 (1990). On remand, such records should be sought and, if produced, considered.

### IV. CONCLUSION

In conclusion, we point out that if the medical evidence in the case did not raise the ambiguities we have pointed out regarding the role of the degenerative changes of the foot and the short left leg in the appellant's disablement we would agree with the appellant that the Secretary should not be given a second bite at the apple. However, we stress that the purpose of the remand here is for a full readjudication with "a critical examination of the justification of the decision" after an independent medical examination and efforts to produce any Dr. Whipp medical records. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991).

Accordingly, we retain jurisdiction and the BVA's March 5, 1990, decision is vacated and the matter is remanded to the Board for proceedings in accordance with this opinion. The Secretary, within 10 days after the Board's decision on remand, shall file with the Clerk and serve upon the appellant a copy of that decision. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court and, if so, shall include a statement of issues pursuant to Rule 6 of the Court's Rules of Practice and Procedure.

VACATED AND REMANDED.

MANKIN, Associate Judge, concurring in part and dissenting in part.

While I agree with the majority that a remand is necessary in order to determine service connection for appellant's knee condition, I would reverse on the pes planus issue under 38 C.F.R. § 4.71(a), Diagnostic Code 5276 (1990). The record contains only two medical reports pertaining to appellant's pes planus and only one contains a detailed description of the examination and the physician's findings.

The first consists of handwritten notes made by a VA examiner in October 1988. This report was made on a standard VA form "Report of Medical Examination for Disability Evaluation". It was conducted by a general surgeon who made a note of moderate pes planus as well as other illegible notations. The report also indicated that the surgeon was "unable to relate pes planus and R knee and LB problem." R. at 55. The notes on this form are cursory and he recommended an exam by an orthopedic specialist. *See* R. at 52–54.

The second medical report is a written report made after examination by a podiatrist in October 1988. This report lists findings upon physical examination which match those of severe pes planus under 38 C.F.R. § 4.57—Static Foot Deformities (1990) and 38 C.F.R. § 4.71a Code 5276. Appellant was noted to have "[b]iomechanically significant forefoot valgus with a plantar-flexed first ray complex accentuating the instability of the midfoot fault in late midstance phase of gait." R. at 56. He was also noted to suffer from "[a] rigid forefoot valgus with an uncompensated rearfoot varus accentuating the excessive in gait." R. at 57. The portion of the Code which deals with static foot deformities mentions the valgus position of the foot in reference to severe cases. It states, "[i]n severe cases there is gaping of bones on the inner border of the foot, and rigid valgus position...." 38 C.F.R. § 4.71a Code 5276 provides that a 30–percent rating is to be awarded in "severe" cases. Thus, the podiatrist's statements in reference to the foot valgus would support a 30–percent rating.

The podiatrist's report also noted "a significant medial column ... excessive midstance pronation noted with a mal-alignment of the knee joint complex in late midstance phase." R. at 57. The 30–percent rating criteria also refers to "objective evidence of marked deformity (pronation, abduction, etc.)...." Again the 30–percent rating criteria closely match the podiatrist's findings in relation to appellant's gait and stance.

The 30–percent rating criteria refers to "pain on manipulation and use accentuated...." The podiatrist's report noted a "[p]ainful pronated gait accentuated by poor foot mechanics." R. at 57. The report further noted that appellant was complaining of significant foot and knee pain accentuated by activity. In addition he noted that appellant had related to him that he had been seeing his personal physician for back, knee, and foot problems which the doctor felt were accentuated by poor foot mechanics. Appellant's statements to the podiatrist are uncontroverted.

Finally, the 30–percent criteria also refers to "characteristic callosities." The 1988 podiatrist's report noted that appellant suffered from "significant calcifications of the achilles attachment as well as other degenerative findings in the midfoot fault." R. at 57.

A careful review of the report of the podiatrist reveals that appellant's pes planus more closely resembles the 30–percent rating criteria than the 10–percent criteria.

The BVA decision cited the aforementioned information concerning the podiatrist's exam in 1988 but then went on to conclude that appellant is not entitled to a rating above 10 percent for his service-connected pes planus. The BVA concluded that appellant is not entitled to a 30–percent rating because, "[o]n recent VA examination on October 1988, the appellant was clinically described as only of moderate degree. Although he had some pronation of the feet and impaired gait on podiatry examination that month, it is our opinion that, at least some of his gait impairment may be attributed to degenerative changes in his feet and other conditions for which service connection is not in effect, and therefore may not be considered in evaluation of this claim. Additionally, the podiatrist felt that the appellant would receive some relief from using orthotics." *William C. Dyess*, BVA 90–06793, at 5 (March 5, 1990).

The Board gave its own opinion of appellant's medical condition which is not supported by medical evidence in the record. The BVA did not provide any medical authority to support its conclusions. We cautioned the Board against this in *Colvin v. Derwinski*, 1 Vet.App. 171 (1991); *see also Murphy v. Derwinski*, 1 Vet.App. 78 (1990). In *Colvin* we held that "the BVA panels must consider only independent medical evidence to support their findings rather than provide their own medical judgment in the guise of a Board opinion." *Id.* at 172. I find the BVA conclusions in this case to be similar to those in *Colvin* wherein we found that the BVA was, "in effect, refuting the expert medical conclusions in the record with its own unsubstantiated medical conclusions." *Id.* at 175. We fur-

ther noted that where the medical evidence of record is insufficient or of doubtful credibility the BVA is free to seek additional medical evidence or it may rely upon medical authority in recognized medical treatises. Likewise, the BVA was free to seek additional medical evidence or rely upon treatises in this case but it instead chose to draw its own medical conclusions.

The Board also seems to rely on the fact that the 1988 VA examination report described appellant's condition as pes planus of a moderate degree. In so doing the Board ignores the majority of the evidence which would lead to the conclusion that appellant is entitled to a 30–percent rating.

The Board also appears to give greater weight to the VA examination than the podiatrist's examination which was performed after the VA examiner requested further evaluation. The VA examination report merely consists of brief handwritten notes and there is no indication that the October 1988 VA exam was a thorough exam. The podiatrist's report does show that he conducted a thorough examination. Additionally, the Board appears to have totally ignored the podiatrist's description of appellant's condition which closely fits the criteria for the 30–percent rating for pes planus.

I would hold the BVA finding that appellant is entitled to only a 10–percent rating to be clearly erroneous. In *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), we discussed 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)) which states that this Court may hold unlawful and set aside findings of material fact only if they are found to be clearly erroneous. In *Gilbert*, at 52–53, we noted that, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Id.* at 52–53; *see also, Sammarco v. Derwinski*, 1 Vet.App. 111, 112–114 (1991). *Gilbert* relied upon the United States Supreme Court holding that a court of appeals may not reverse if the lower court's "account of the evidence is plausible in light of the record viewed in its entirety...." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citing *United States v. Yellow Cab. Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)).

In general, " '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.' " *Gilbert*, at 52 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

In the case at bar, I am left with a definite and firm conviction that a mistake has been committed in not granting appellant a 30–percent disability rating for pes planus since the diagnosis and statements in the only descriptive medical report in the record closely match the criteria for the 30–percent rating. The only other medical evidence in the record consists of handwritten notes which are not detailed and contain no discussion of appellant's condition. For the reasons discussed herein I find no plausible basis in the record for the finding that appellant is entitled to only a 10–percent disability rating and, therefore, I would reverse on the pes planus issue and grant appellant a 30–percent disability rating for pes planus.