﻿Citation Nr: AXXXXXXXX
Decision Date: 01/17/19 Archive Date: 01/16/19

DOCKET NO. 181017-607
DATE: January 17, 2019

ORDER

Entitlement to an initial rating in excess of 30 percent for bilateral flat feet from April 30, 2008 to July 12, 2015 is denied.

Entitlement to an initial rating of 50 percent for bilateral flat feet from July 13, 2015 through October 22, 2017, and no later, is granted subject to the laws and regulations governing the payment of monetary benefits.

Entitlement to an initial rating in excess of 30 percent for bilateral flat feet from October 23, 2017 to March 6, 2018 is denied. 

Entitlement to an initial compensable rating for right foot hallux valgus from April 30, 2008 to March 6, 2018 is denied.

Entitlement to an initial compensable rating for left foot hallux valgus from April 30, 2008 to March 6, 2018 is denied.

REMAND

Entitlement to service connection for depression claimed as secondary to service-connected disabilities is remanded.

Entitlement to service connection for a disability claimed as vertigo/dizziness is remanded.

Entitlement to service connection for bilateral hearing loss disability is remanded.

Entitlement to service connection for tinnitus is remanded.

FINDINGS OF FACT

1. From July 13, 2015 to October 22, 2017, the Veteran’s bilateral pes planus was not shown to be improved by orthopedic shoes or appliances, and had marked deformity.

2. From April 30, 2008, to July 12, 2015, and from October 23, 2017, to March 6, 2018 the Veteran’s bilateral pes planus has not been shown to have not been improved with orthopedic shoes or appliances, and/or severe spasm of the tendo achillis on manipulation was not shown, and/or extreme tenderness of plantar surfaces was not shown.

3. The Veteran’s right and left hallux valgus has been shown by clinical evidence to be less than severe, and without operation with resection, and has not been shown to cause pain on joint movement.

CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 30 percent for bilateral flat feet from April 30, 2008 to July 12, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5276.

2. The criteria for an initial rating of 50 percent for bilateral flat feet from July 13, 2015 through October 22, 2017, have been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5276.

3. The criteria for an initial rating in excess of 30 percent for bilateral flat feet from October 23, 2017 to March 6, 2018, have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5276.

4. The criteria for an initial compensable rating for right foot hallux valgus from April 30, 2008 to March 6, 2018 have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5281.

5. The criteria for an initial compensable rating for left foot hallux valgus from April 30, 2008 to March 6, 2018 have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5281.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The Veteran had active military service from September 1974 to September 1976. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the April 2018 rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed the RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Increased Ratings

Legal Criteria

Disability evaluations are determined by comparing a Veteran’s present symptomatology with criteria set forth in VA’s Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. Id. § 4.3. 

Further, a disability rating may require re-evaluation in accordance with changes in a Veteran’s condition. It is thus essential in determining the level of current impairment that the disability is considered in the context of the entire recorded history. Id. § 4.1. Nevertheless, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The Board notes that staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Terms such as “slight”, “moderate”, “severe”, “marked”, and “pronounced” are not defined in the Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are “equitable and just” as contemplated by the requirements of the law. 38 C.F.R. § 4.6. The Board is not bound by a clinician’s use of a term.

Additional reference to the Veteran’s disabilities are presented in additional evidence of record beyond the most detailed pertinent evidence discussed by the Board in this decision. The additional evidence of record does not present findings concerning the Veteran’s disabilities that significantly expand upon, revise, or contradict the findings in the most detailed evidence discussed by the Board in this decision 

Entitlement to an increased initial rating for bilateral flat foot from April 30, 2008 (the effective date of the grant of service connection) to March 6, 2018 (the date of his opt-in form for higher-level review)

The AOJ found that the Veteran’s bilateral flat foot disability is rated as 30 percent disabling under DC 5003-5276 based on characteristic callosities, objective evidence of marked deformity, pain on manipulation and use of the feet, and mild symptoms. See September 2015 rating decision. He would be entitled to a 50 percent rating if he had pronounced symptoms of flat feet, marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasms of the tendo achillis on manipulation, not improved by orthopedic shoes or appliances. 

The criteria for evaluating pes planus are not expressly written in the conjunctive as there is no “and” in the listed symptoms. Accordingly, it is not expected that all cases of pes planus will show all the findings specified. See Dyess v. Derwinski, 1 Vet. App. 448, 455-56 (1991) (applying 38 C.F.R. § 4.21 when evaluating pes planus). See also Camacho v. Nicholson, 21 Vet. App. 360, 366 (2007) (the cases in which the Court has indicated that 38 C.F.R. § 4.21 applies are those in which the diagnostic criteria are not clearly joined in the conjunctive). Essentially the criteria for pes planus list symptoms equating to mild, moderate, severe and pronounced pes planus. Additionally, the criteria for evaluating pes planus are not successive in nature; thus, it is not necessary that all criteria be met for a lower rating to allow for the next higher rating. See Tatum v. Shinseki, 23 Vet. App. 152, 155-56 (2009). The rating criteria that most accurately reflects the Veteran’s disability picture is of the most importance here. See 38 C.F.R. § 4.7.

A July 13, 2015 VA examination report for the Veteran’s feet reflects that the Veteran did not report flare-ups of his feet that impact the function of the feet. The report reflects that the Veteran had pain on use and manipulation and that the pain was accentuated by use and manipulation. He did not have an indication of swelling on use, but he did have characteristic callouses on both feet. [He is separately service connected for bilateral hallux valgus with corns and calluses]. He did not have extreme tenderness of plantar surfaces but he did have decreased longitudinal arch height of both feet on weight-bearing. He also had objective evidence of marked deformity of both feet and marked pronation of both feet. The Veteran did not have inward bowing of the achilles tendon and did not have marked inward displacement and severe spasm of the Achilles tendon. The Board notes that the examiner checked that box that the condition was not improved with orthopedic shoes or appliances. Furthermore, the Veteran reported that he was not receiving any treatment for his pes planus. The examiner noted that there was no functional loss, to include during a flare-up, and that bilateral pes planus would not impact his being able to perform any type of occupational task. 

Based on the foregoing, and affording the Veteran the benefit of the doubt, the Board finds that the Veteran may be granted a 50 percent rating from the date of the July 13, 2015, VA examination, which is the earliest evidence that the Veteran’s foot disability was not improved by orthopedic shoes or appliances and was also manifested by marked pronation, two of the criteria of pronounced symptoms listed in the 50 percent rating criteria.

A May 2017 VA podiatry record reflects that the Veteran was seen for the first time and reported painful plantar nucleated calluses. VA clinical records reflect that the Veteran was fitted with extra depth shoes in June 2017 and educated in the use and care of them. 

An October 23, 2017 VA examination report specifically addressed the Veteran’s plantar fasciitis and problems with prolonged walking and standing. The report specifically noted that there was not request to evaluate the Veteran’s service connected flat feet. [The Veteran was subsequently service-connected for bilateral plantar fasciitis based on painful motion of the knee]. Although the examination was for plantar fasciitis, not pes planus, the physical findings reflect that the Veteran did not have extreme tenderness of plantar surfaces, did not have marked deformity, did not have marked pronation, did not have marked inward displacement and did not have severe spams of the Achilles tendon. He also had improvement (relief) with orthopedic shoes or appliances. 

Based on the foregoing, the Board finds that the Veteran’s symptoms most nearly approximate no higher than a 30 percent rating from the date of the October 23, 2017 examination report; his symptoms do not more nearly approximate the criteria for a 50 percent rating from October 23, 2017, to March 6, 2018. Again, the Board is mindful that the rating criteria are not successive and that the Veteran does not need to meet all of the symptoms in a rating to be assigned that rating. However, the overall picture for the Veteran’s disability indicates that it more closely approximates a 30 percent rating rather than a 50 percent rating prior to July 13, 2015, and from October 23, 2017 to March 6, 2018. Notably, during those periods the preponderance of the evidence is against a finding that he had pronounced symptoms of flat feet. He did not have the symptoms listed in the 50 percent rating, nor did he complain of other symptoms indicative of pronounced pes planus. 

Entitlement to an initial compensable rating for left foot hallux valgus to include corns, arthritic changes, and calluses from April 30, 2008 (the effective date of the grant of service connection) to March 6, 2018 (the date of his opt-in form for higher-level review) AND Entitlement to an initial compensable rating for right foot hallux valgus to include corns, arthritic changes, and calluses from April 30, 2008 (the effective date of the grant of service connection) to March 6, 2018 (the date of his opt-in form for higher-level review) 

The AOJ found that the Veteran’s hallux valgus of the left and right feet, to include corns and calluses is rated as noncompensable under DC 5003-5280 based on there being a diagnosed disability with no compensable symptoms. The maximum rating allowed for hallux valgus is 10 percent. The July 2015 VA examination report reflects that the Veteran’s hallux valgus was mild or moderate bilaterally and that he had not had surgery. 

An October 23, 2017 VA examination report reflects that the Veteran reported that he had “heel pain secondary to [service-connected] right and left flat feet/hallux valgus.” A clinical opinion notes that the Veteran’s “‘heel pain’ or bilateral feet plantar fasciitis is proximately related to his [service-connected] bilateral flat feet (and right lower hallux valgus).”

The Veteran is separately rated for bilateral plantar fasciitis associated with his hallux valgus, and is separately rated for his bilateral pes planus. The evidence does not support a finding that he has other painful motion of the joints due to hallux valgus separate and distinct from the painful movement contemplated in the current rating for bilateral pes planus; thus, a separate compensable rating prohibited under 38 C.F.R. § 4.14. His painful motion is already compensated. The evidence, as noted above, is also against a finding that he has severe hallux valgus (i.e. it was noted to be mild to moderate); or that he has had had an operation with resection of the metatarsal head. Thus, a compensable rating is not warranted. 

REASONS FOR REMAND

Although the Veteran’s claims noted below have been brought before the Board under RAMP, the Board finds that there are pre-decisional duty to assist errors. 

Prior to the April 2018 rating decision on appeal, the RO obtained VA examinations (see McLendon v. Nicholson, 20 Vet. App.79, 81 (2006)). However, the Board finds that the examinations were inadequate in some aspects. Thus, the issues must be remanded back to the Agency of Original Jurisdiction to correct the errors. 

When VA obtains an examination and/or opinion, it must ensure that such is adequate. See Barr v. Nicolson, 21 Vet. App. 303 (2007). As discussed in further detail below, supplemental opinions are warranted.

Entitlement to service connection for depression claimed as secondary to service-connected disabilities is remanded.

The Veteran contends that he has depression as secondary to his service-connected disabilities, to include his feet and headaches. A July 2015 VA examination report reflects that the Veteran has been diagnosed with adjustment disorder with mixed disturbance of emotions and conduct, alcohol use, and stimulant use. The examiner found that the Veteran’s adjustment disorder is less likely as not a progression of his inability to sleep in-service. Post-service stressors were noted to be unemployment (he had been laid off from work when the plant closed two months earlier), the murder of his son two years earlier, and the recent departure of his girlfriend. The Veteran denied any treatment for mental health but reported that in service, he went to sick call for not sleeping. The Veteran reported current symptoms of depressed mood, anxiety, suspiciousness, chronic sleep impairment, and spatial disorientation. The Veteran reported excruciating foot pain, as well as pain in the knees and back. The examiner noted as follows:

There are numerous, more recent possible causes of insomnia, and no evidence of any persistent D/O caused or aggravated by military service that would have insomnia as a symptom. 

A supplemental opinion which addresses whether it is as likely as not that the Veteran’s adjustment disorder and/or any other diagnosed acquired psychiatric disability is causally related to, or aggravated by, a service-connected disability (and not merely to a complaint in service) would be useful to the Board.

Entitlement to service connection for a disability claimed as vertigo/dizziness is remanded.

A November 2015 VA examination report reflects that the Veteran does not have vertigo but has symptoms which are more consistent with orthostatic hypotension. The 2015 VA examination report reflects that the Veteran reported that he “feels lightheaded when he moves from bending over to standing up. He feels that this has been present for most of his life, but has worsened over the last several years.” The Veteran reported that the feeling of dizziness is present for about 20 to 30 seconds and then dissipates. The Veteran denied any significant otologic history, denied recurrent ear infections, and has never had any ear surgery. Upon examination, the Veteran had a normal finding using the Dix Hallpike test. There was no vertigo and no nystagmus. 

Although the examiner found that the Veteran did not have vertigo, a specific opinion as to whether it is as likely as not that the Veteran’s orthostatic hypotension is causally related to service was not provided. Thus, a remand for such is warranted.

Entitlement to service connection for bilateral hearing loss disability is remanded.

A September 2015 VA examination reflects the opinion of the examiner that it is less likely as not that the Veteran’s current hearing loss is a result of military noise exposure. The clinician found that the Veteran had normal hearing in both ears upon separation; however, the Board notes that the Veteran’s July 1976 Report of Examination for separation purposes reflects that he had abnormal hearing acuity in the right ear at the 500 Hz level (i.e. 30 dB). Thus, a supplemental opinion which considers that the Veteran had abnormal hearing in the right ear upon separation is warranted.

Entitlement to service connection for tinnitus is remanded.

The Board finds that this issue is inextricably intertwined with the issue of entitlement to service connection for bilateral hearing loss disability. Thus, it must also be remanded.

The matters are REMANDED for the following action:

1. Obtain a supplemental opinion to the July 2015 VA examination report on an acquired psychiatric disability. 

a. The clinician should opine as to whether it is as likely as not (50 percent or greater) that the Veteran has any psychiatric disability (to include adjustment disorder) causally related to a service-connected disability (to include bilateral flat feet, right shoulder arthritis, psoriasis, tension headaches, bilateral plantar fasciitis, bilateral hallux valgus, and a sinus disorder); and

b. The clinician should opine as to whether it is as likely as not (50 percent or greater) that the Veteran has any psychiatric disability (to include adjustment disorder) aggravated by a service-connected disability (to include bilateral flat feet, right shoulder arthritis, psoriasis, tension headaches, bilateral plantar fasciitis, bilateral hallux valgus, and a sinus disorder).

2. Obtain a supplemental opinion to the November 2015 VA examination report on vertigo/dizziness/orthostatic hypotension. 

a. The clinician should opine as to whether it is as likely as not (50 percent or greater) that the Veteran has orthostatic hypotension causally related to a service-connected disability (to include bilateral flat feet, right shoulder arthritis, psoriasis, tension headaches, bilateral plantar fasciitis, bilateral hallux valgus, and a sinus disorder); and

b. The clinician should opine as to whether it is as likely as not (50 percent or greater) that the Veteran has orthostatic hypotension aggravated by a service-connected disability (to include bilateral flat feet, right shoulder arthritis, psoriasis, tension headaches, bilateral plantar fasciitis, bilateral hallux valgus, and a sinus disorder).

3. Obtain a supplemental opinion to the September 2015 VA examination report on bilateral hearing loss disability. 

The clinician should opine as to whether it is as likely as not (50 percent or greater) that the Veteran’s has a current hearing loss disability causally related to active service. 

The clinician should consider the pertinent evidence of record, to include the Veteran’s July 1976 Report of 

 

Examination for separation purposes which reflects that the Veteran had abnormal hearing acuity in the right ear at the 500 Hz level (i.e. 30 dB). 

 

M. C. GRAHAM

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD T. Wishard