**Bonnie J. MURPHY, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–107.**

United States Court of Veterans Appeals.

Argued Oct. 11, 1990.

Decided Nov. 8, 1990.

Andrew H. Marshall (non-attorney practitioner), and John J. Corcoran, Washington, D.C., argued the case, and Edward J. Kow-

alczyk (non-attorney practitioner), was on the brief, for appellant.

Stephen A. Bergquist, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before KRAMER, FARLEY and HOLDAWAY, Associate Judges.

FARLEY, Associate Judge:

Appellant filed a claim seeking service connection for her husband's death from glioblastoma multiforme, a type of cancer. The Board of Veterans' Appeals (BVA) affirmed the denial of service connection based upon the finding that no causal relationship had been shown between an earlier, service connected, form of cancer and the glioblastoma multiforme. We vacate the BVA decision and remand with directions that the BVA either (a) provide "reasons or bases" for the conclusion that appellant failed to submit a well grounded claim because no such relationship could exist; or (b) assist appellant in the gathering of records and determine whether such a relationship did, in fact, exist.

## I.

The facts giving rise to this appeal may be briefly summarized. Appellant, Bonnie J. Murphy, is the widow of Lt. Col. Francis B. Murphy who retired from the United States Air Force in June 1970. Within five months after retirement, an epidermoid carcinoma was found on the right base of the veteran's tongue. Following a course of radiation therapy, a radical right tongue-jaw-neck dissection was performed and the tumor was excised. Service connection was established for residuals of the epidermoid carcinoma and the surgery. A subsequent examination reported no evidence of a recurrence of the epidermoid carcinoma, R. at 29, and the record in this case does not contain any such evidence. Appellant did indicate that the veteran had skin cancers surgically removed three times as an outpatient during 1986 and 1987. R. at 60. The veteran died on June 10, 1988. The death certificate lists the cause of death as

glioblastoma multiforme ("[A] rapidly growing tumor, usually confined to the cerebral hemispheres...." *Dorland's Illustrated Medical Dictionary* 699 (27th ed. 1988)). The time between the onset of the condition and the veteran's death is listed on the death certificate as four months.

Appellant sought benefits based upon the argument that, since her husband's 1970 cancer was service connected, and he died due to cancer, service connection should be granted. In addition, appellant appears to suggest that additional medical records should be obtained and reviewed along with the tissue slides of the 1970 cancer. In a decision dated December 8, 1989, the BVA affirmed the denial of service connection for the veteran's death. The Board found, *inter alia*, that: "No causal relationship has been shown between the service-connected residuals of epidermoid carcinoma and the development of glioblastoma multiforme." *Bonnie J. Murphy,* loc. no. 934379 at 6 (BVA Dec. 8, 1989). It concluded that: "Glioblastoma multiforme was not incurred in or aggravated by active service, was not proximately due to or the result of service-connected disability, and may not be presumed to have been incurred in active service." *Id.* This timely appeal followed.

## II.

The issue presented to this Court for review has changed during the course of this appeal. In her Statement of Issues, appellant originally asked that we determine whether the BVA "clearly erred in denying service connection for the cause of the veteran's death." However, in her brief, appellant stated that the issue was: "Whether the Secretary arbitrarily failed to discharge his duty to assist Appellant in developing evidence in support of Appellant's claim and, further, arbitrarily failed to explain the reasons for his inaction." Br. of Appellant at 1. It is the latter issue which we will address.

Section 3007(a) of title 38 provides:

Except when otherwise provided by the Secretary in accordance with the provi-

sions of this title, a person who submits a claim for benefits under a law administered by the Department of Veterans Affairs shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim. Such assistance shall include requesting information [from the head of any Federal department or agency].

38 U.S.C. § 3007(a) (1988).

■ Thus, it is true, as appellant argues, that the Secretary and the Department of Veterans Affairs (VA) have a statutory duty to assist claimants during the non-adversarial process of claims adjudication. The issue, then, is not whether such a duty exists but under what circumstances does it arise.

■ As we have noted in the past, § 3007(a) establishes "chronological obligations." *Gilbert v. Derwinski*, 1 Vet. App. 49, 55 (1990). The initial burden is on the shoulders of the veteran or the claimant: "[A] person who submits a claim ... shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." § 3007(a). Because a well grounded claim is neither defined by the statute nor the legislative history, it must be given a common sense construction. A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § 3007(a).

■ The BVA may conclude that a claim was not well grounded, that the claimant did not or could not meet the initial burden imposed by § 3007(a), and that there was no duty to provide assistance to the claimant. Such a conclusion, especially if it is medical or scientific in nature, like all other findings and conclusions of the BVA, must be supported by "a written statement of ... the reasons or bases for those findings and conclusions."

38 U.S.C. § 4004(d)(1) (1988); *see also Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). Although the Secretary appears to argue to the contrary in this appeal, Br. of Appellee at 11, the fact that a BVA panel may include a physician is not by itself sufficient for the purposes of the statute, the veteran or this Court. BVA decisions must include the "reasons or bases" for medical conclusions, even those opined by a BVA physician; a mere statement of an opinion, without more, does not provide an opportunity for the veteran to explore a basis for reconsideration or for this Court to review the BVA decision "on the record" as required by 38 U.S.C. § 4052(b) (1988). The specific type of support will depend upon the nature of the particular claim, but such "reasons or bases" could include relevant portions of medical treatises and journals, epidemiological studies, perhaps even references to legal decisions on the same issues. Moreover, as we have noted, the BVA

> will find it easier to fulfill this mandate since Congress recently imposed a similar requirement on the Secretary when claims are denied. In 1989, Congress enacted 38 U.S.C.A. § 3004(a)(2) (West Supp.1990), which provides that "[i]n any case where the Secretary denies a benefit sought, the notice ... shall also include (A) a statement of the reasons for the decision, and (B) a summary of the evidence considered by the Secretary." The legislative history makes it clear that this requirement "would not be met by such terms as 'service connection not found' or other such conclusory statements." 135 Cong.Rec. S16466 (daily ed. Nov. 21, 1989) (Explanatory Statement on the Compromise Agreement on H.R.901 as Amended, the "Veterans Benefits Amendments of 1989").

*Gilbert v. Derwinski*, 1 Vet.App. 49 at 57, (1990).

■ Once the claimant has "submitted evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," the claimant's initial burden has been met. The Secretary, then, is obligated under § 3007(a) to assist "such

a claimant in developing the facts pertinent to the claim." Within the non-adversarial process of VA claims adjudication, the word "pertinent" takes on an even stronger meaning; the Secretary's duty applies to *all* relevant facts, not just those for or against the claim. Having been codified by Public Law 100–687, this obligation is more than a matter of policy or executive discretion; it is mandated by statute. Indeed, as the Senate Veterans' Affairs Committee commented with respect to the Secretary's duty to assist:

> Although the claimant has the burden of submitting evidence in support of the claim, that evidence may be in the veteran's service record or other governmental records and, therefore, in the control of the Federal Government. In such situations, the VA should be responsible for providing the material—or seeing that it is provided—needed to make the determination on eligibility.

S.Rep. No. 418, 100th Cong., 2nd Sess., 33–34 (1988).

When a claimant submits a properly filled out and executed VA form 21–526, Veteran's Application for Compensation and Pension, the Secretary has the veteran's biographical, family, medical, and service data. This information will enable the Secretary to fulfill his statutory duty to assist the claimant by securing any relevant VA, military or other governmental records. In addition, if private medical, hospital, employment or other civilian records would assist the development of "the facts pertinent to the claim", the Secretary would be able to request them from the claimant or, upon authorization, obtain them directly.

### III.

It is not disputed that the veteran received service connection for cancer in 1970 and that he died of cancer in 1988. The BVA decision, as well as the Statement of the Case prepared by the Regional Office, essentially concluded that the claimant did not submit a well grounded claim and that, therefore, the Secretary did not have a duty under § 3007(a) to assist the claimant. The reason the claim was not well grounded, and why further development was unnecessary, was because: "The glioblastoma multiforme, reported as the immediate cause of the veteran's death, was primary in nature and is in the category of rapidly growing carcinomas.... [It] was reported to have its onset four months prior to death." *Murphy* at 5. From this, the BVA concluded that: "No causal relationship has been shown between the service-connected residuals of epidermoid carcinoma and the development of glioblastoma multiforme." *Murphy* at 6.

Appellant argues that she did indeed submit a well grounded claim: "The average person would have the same belief as the widow that a cancer 'is a cancer is a cancer' and that if a veteran was service connected for cancer and died of cancer that there would be a direct relationship between the two." Br. of Appellant at 8. Appellant's argument continues, having met her initial burden, she is entitled to the assistance of the Secretary "in developing the facts pertinent to the claim." Specifically, appellant seeks a remand with a direction that the Secretary obtain and review the veteran's post-service medical records and tissue slides of his 1970 cancer so that she can demonstrate the "direct relationship between the two" cancers.

■ It is not clear from the decision whether the BVA concluded that the claim was not well grounded or that the claimant had failed to demonstrate that there was a relationship between the two episodes of cancer. If the BVA did conclude that the claim was not well grounded because there was no "medical-scientific basis", Br. of Appellee at 10, for such a relationship, a remand is necessary because the BVA decision did not contain the requisite statement of "reasons or bases" for such a conclusion. On the other hand, if the finding of the BVA that "no causal relationship has been shown" between the epidermoid carcinoma and the glioblastoma multiforme is taken at face value, it necessarily means that the claimant submitted a well grounded claim which was not "shown" by the evidence. In such event, a remand is necessary because the Secretary denied the

appellant the opportunity to make such a showing by failing to provide the assistance required by § 3007(a).

## IV.

For the reasons noted above, the decision of the BVA is vacated and remanded. On remand, if the BVA concludes that the claim is not well grounded because the glioblastoma multiforme is not medically or scientifically related to the epidermoid carcinoma, it must provide "reasons or bases" for such a scientific or medical conclusion. If, however, the BVA concludes that the claim is well grounded, the Secretary shall secure and review the records of the veteran's post-service hospitalization and determine whether those records show that a causal relationship does, in fact, exist.

*It is so Ordered.*