**Wilson F. COLLAMORE, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–898.**

United States Court of Veterans Appeals.

Submitted Nov. 19, 1991.

Decided Feb. 19, 1992.

Wilson F. Collamore, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls, Washington, D.C., were on the pleadings, for appellee.

Before IVERS, Associate Judge.

## MEMORANDUM DECISION

IVERS, Associate Judge:

Appellant, Wilson F. Collamore, seeks review of an April 18, 1990, decision of the Board of Veterans' Appeals (BVA or Board). In that decision, the BVA denied service connection for polycythemia vera and arteriosclerotic heart disease. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052). Because the Board failed to address the credibility of the sworn testimony of the veteran's wife and to provide adequate reasons or bases for rejecting her testimony, and because the Department of Veterans Affairs (formerly Veterans' Administration) (VA) failed in its duty to assist the veteran by not attempting to obtain medical records from a private physician, the BVA decision appealed from is vacated and the case remanded for further development consistent with this decision.

The veteran served in the U.S. Army from August 27, 1942, to December 3, 1945. R. at 6. In May 1955, the veteran filed an application with the VA for compensation or pension in which he stated that in April of that year he was admitted to a hospital for four days where polycythemia and coronary insufficiency was diagnosed. R. at 8. That May, the veteran was admitted to a Veterans' Administration Clinic (VAC), complaining of pain and pressure in his left chest and a "funny feeling" in his left arm. In the clinical record of the VAC, it is noted that "[o]n arrival at the hospital the patient had a note from [a private physician], stating that the patient had polycythemia and coronary insufficiency." R. at 12. The veteran was hospitalized from May to July 1955, during which time the VAC conducted its own evaluation of the veteran and concluded that polycythemia vera and coronary artery disease were "not found". R. at 14. On July 25, 1955, a VA rating board issued a decision denying the veteran's claim for compensation or pension. R. at 11. In September 1955, a one-day follow-up examination of Mr. Collamore was conducted at the VAC, and again doctors were unable to render a diagnosis but specifically noted that coronary artery disease and polycythemia vera were not found. R. at 16.

In June 1956, Mr. Collamore was again admitted to the VAC, this time with stiffness of the neck and pain radiating to the spine and left shoulder blade. R. at 19. The veteran was hospitalized for one month for evaluation, and the diagnosis rendered was "unknown disease, neurological." R. at 20. In November 1956, the veteran was evaluated again by the VA Arthritis Board. R. at 23. The following month, a rating board decision was issued denying the veteran's reopened claim for permanent and total disability and entitlement to "Part III" benefits. The rating board noted that the possibility of cervical disc syndrome was considered, but a cervical myelogram was found to be normal. R. at 25. Although the rating board concluded that the undiagnosed neurological condition was not 100% disabling, a rating of 60% was assigned. R. at 26.

On October 19, 1968, the veteran suffered a myocardial infarction, and in December of that year, a VA rating board considered the veteran's reopened claim for pension and assigned him a 30% rating for non-service-connected arteriosclerotic heart disease. R. at 28. In June 1969, a rating board denied the veteran's claim for service connection for passing out spells but decided that, because the heart pathology confined him to strictly sedentary work, it warranted an increase from 30% to 60%. R. at 41.

Several times throughout the 1970's and 1980's, the veteran claimed entitlement to aid and attendance and housebound benefits but was repeatedly denied. R. at 42, 45–46, 49, 52. In November 1988, a rating decision was issued on a claim for service connection for polycythemia vera and heart problems. The rating board denied the claim. R. at 53. The veteran appealed the decision denying him service connection to the BVA.

On July 11, 1989, a hearing was held on appeal before a hearing officer of the VA Medical and Regional Office Center, Togus, Maine. The veteran was hospitalized and unable to attend the hearing, but his wife, Bridget K. Collamore, attended and testified under oath. Mrs. Collamore testified that the veteran told her in December 1945 that during basic training he had passed out many times but that nothing was done about it because the Army was "pushing military personnel through as fast as they could ... preparing troops to go overseas to war ..." R. at 67. Mrs. Collamore also testified that in May 1946, six months after the veteran had been discharged from active duty, she took him to a private physician who conducted a physical examination and told her that her husband was suffering from a coronary insufficiency. Mrs. Collamore, a practicing nurse for thirty-two years, testified that her husband had also developed polycythemia, which she defined as an ailment that caused one to manufacture too much blood, and she said that the private physician "bled him" and that after three months her husband's "hemoglobin came down to normal". R. at 67–68.

The BVA noted in the "Evidence" section of its decision that appellant's spouse gave testimony at a July 1989 personal hearing, but in the "Discussion and Evaluation" section of the decision, the Board does not mention this testimonial evidence or assess its credibility or probative value. The Board merely states that "[s]ervice medical records ... show no complaint or finding of either disease" and that "medical evidence presented in this case does not indicate a clinical manifestation of polycythemia vera" and "[a]rteriosclerotic heart disease is initially shown many years after the appellant's separation from service." However, the Board does not discuss whether the VA ever attempted to obtain medical records from the doctor who, according to Mrs. Collamore, diagnosed the two diseases in 1946, within one year of the veteran's discharge from service.

■ The Department of Veterans Affairs has a statutory duty to assist the veteran in developing the facts pertinent to his or her claim. 38 U.S.C. § 5107(a) (formerly § 3007(a)); *Littke v. Derwinski*, 1 Vet.App. 90 (1990). In *Murphy v. Derwinski*, 1 Vet.App. 78 (1990), this Court held that that duty includes assisting the veteran in obtaining both government and civilian records. *Murphy*, 1 Vet.App. at 82. *See also Littke*, 1 Vet.App. at 91–92. Mrs. Collamore testified that the veteran was diagnosed by the private physician as having the ailments for which he seeks service connection as early as 1946. A diagnosis at that time would have been within one year of his discharge from service, thereby giving rise to the statutory presumption of incurrence in service. 38 U.S.C. § 1112(a)(1) (formerly § 312(a)(1)); 38 C.F.R. §§ 3.307, 3.309. Therefore, records corroborating her testimony are pertinent to developing the veteran's claim of service connection. Moreover, in addition to assisting the veteran by attempting to obtain the records of the private physician, the VA also has a duty to search its own files for service medical records that might corroborate Mrs. Collamore's testimony. *See Jolley v. Derwinski*, 1 Vet.App. 37, 40 (1990).

■ Finally, the BVA failed in its obligation to address the credibility of Mrs. Collamore's testimony. The regulations regarding presumptive service connection for chronic disease, which specifically include arteriosclerosis, state that the evidentiary basis for such presumption "may be established by medical evidence, competent lay evidence or both." 38 C.F.R. §§ 3.307(b), 3.309(a). In *Gilbert v. Derwinski*, 1 Vet. App. 49 (1990), this Court held that the BVA is required to include in its decisions "reasons or bases" for its findings and conclusions. *Gilbert*, 1 Vet.App. at 57.

Furthermore, in *Ohland v. Derwinski,* 1 Vet.App. 147 (1991), the Court held that the BVA "failed to express the 'reasons or bases' for its assessment of the lay evidence from the appellant and his wife." *Ohland,* 1 Vet.App. at 150. As in that case, the BVA here has provided "neither an analysis of the credibility or probative value of the evidence" submitted by Mrs. Collamore on behalf of the veteran in support of his claim or a statement of the reasons or bases for its rejection. *Ohland,* 1 Vet.App. at 149–150. *See also Gilbert,* 1 Vet.App. at 59.

Therefore, upon consideration of appellee's motion for summary affirmance, appellant's informal brief, and a review of the record, it is the holding of the Court that appellee's motion is DENIED, the decision of the BVA is VACATED, and the case is REMANDED for further development consistant with this decision.