**Richard Joseph MARAGNI, Appellant,**

v.

**Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.**

No. 91–487.

United States Court of Veterans Appeals.

Submitted Nov. 21, 1991.

Decided March 2, 1992.

Richard Joseph Maragni, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, D.C., were on the pleadings for appellee.

Before IVERS, Associate Judge.

## MEMORANDUM DECISION

IVERS, Associate Judge:

Appellant, Richard J. Maragni, seeks review of a January 23, 1991, decision of the Board of Veterans' Appeals (BVA or Board). In that decision, the BVA upheld a rating action reducing service-connected disability evaluations for nonpsychotic brain syndrome due to trauma from 50% to 30% and for left lower extremity hemiparesis from 20% to 10%. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052). Because the Board upheld the reduction of the ratings based on evidence from one examination without considering all the evidence of record for sustained improvement in the veteran's condition and because the Department of Veterans Affairs (formerly Veterans Administration) (VA) failed in its duty to assist the veteran by neglecting to obtain medical records pertinent to the veteran's claim and by failing to schedule a physical examination, the BVA decision appealed from is vacated and the case remanded for further development consistent with this decision.

## I. BACKGROUND

The veteran served in the U.S. Army from June 1967 to October 1968. R. at 20. In March 1968, the veteran sustained injuries when a jeep overturned on him at Fort Bragg, North Carolina. R. at 9. Injuries resulting from the vehicular accident, for which the veteran is service connected and

which are not at issue in this appeal, consist of the following: hemiparesis, left upper extremity—20% from June 1, 1984; right exotropia with total oculomotor palsy—10% from June 1, 1984; defective hearing, right—10% from June 1, 1984; residuals, fracture right clavicle—10% from June 1, 1984; and tracheotomy—0% from June 1, 1984. R. at 39. In addition, the veteran is service connected for nonpsychotic brain syndrome secondary to trauma and for hemiparesis of the left lower extremity; these disabilities had been rated at 50% and 20%, respectively, from June 1, 1984, affording the veteran a combined disability rating of 80% from that date. The reductions in ratings for these conditions resulted in the reduction of the veteran's combined rating to 60%, and these reductions are the subject of this appeal.

In December 1989, the veteran was notified by the VA to report for a physical examination to determine whether his disability had improved. R. at 1. The examination, which was conducted on January 10, 1990, included neurological, orthopedic, and psychiatric evaluations. In the report resulting from the psychiatric evaluation, the doctor noted, *inter alia,* the following:

"The sum total of Mr. Maragni's psychiatric complaints is rather paltry. He relates psychiatric problems that have been mild or inconsequential, problems for which he has only infrequently thought of or gone for obtaining any help except that in the summer of 1989 he was referred to our psychiatric OPD Clinic but says that 'no one in clinic followed it up', so he did not purseue [sic] the matter any further either.... [H]e reports having poorly defined feelings—described variously as 'funny feelings', 'flashbacks', 'more confusion', 'I'm there, but I'm not there', 'weird feelings', 'visualize being in the jeep', 'sky light up', 'flare in a cannistor came down and hit the jeep', etc. that may last 15–30 minutes or even less.... He has been working steadily full-time and has taken a sick day occasionally for the physical problems from injuries bothering him. He has had passing thoughts of suicide without any plan or attempts. His appetite and weight are stable.... Normal psychomotor activity. Good eye contact. No formal thought disorder.... Affect somewhat subdued but basically broad and appropriate.... Fairly well-versed with current events ... He did not come across as someone who is uncomfortable due to troublesome psychiatric [symptoms] and it almost seemed as if he really had to scratch his head hard to come up with some other psychiatric [symptoms].... Following the serious vehicular accident in March 1968, this patient had regained considerable functioning and has made excellent occupational adjustment.... He has been working steadily, first at the IRS and then since 1983 with the Post Office. Although he describes psychiatric [symptoms], their impact on his life seems mild at best. In fact, he had somewhat of a difficult time coming up with significant, several psychiatric problems." R. at 9–12.

In addition to the psychiatric report, a neurological evaluation showed that the veteran had headaches secondary to head trauma and that there was mild involvement of injury to the third and eighth cranial nerves. R. at 16, 21.

With regard to the veteran's lower left extremity, the VA orthopedic evaluation revealed that the veteran had full range of motion of all joints, including hips, knees, and ankles. The examination also showed five-fifths muscle strength flexor of left hip, hamstring, and quadricep. Dorsiflexion, plantarflexion, inversion and eversion of the ankle were normal. R. at 7.

Subsequent to the January 10, 1990, examination, the VA Regional Office issued a rating decision on March 9, 1990, reducing the veteran's disability rating for nonpsychotic brain syndrome from 50%, the level that had been in effect from June 1, 1984, to 30% effective from June 1, 1990. In addition, the rating board reduced the rating for hemiparesis of the left lower extremity from 20%, effective since June 1, 1984, to 0%, effective as of June 1, 1990. As a result of these reductions, the veteran's combined disability rating was reduced from 80% to 60%. R. at 20–22.

On April 18, 1990, the veteran filed a notice of disagreement with the March 9, 1990, rating decision, and on May 21, 1990, he appealed the decision to the BVA. R. at 28, 34. The veteran's representative filed a VA Form 1–646 on his behalf which noted that his file showed that he had had at least a 10% evaluation for hemiparesis of the left lower extremity from November 1, 1969, and that therefore his evaluation was protected, pursuant to the provisions of 38 C.F.R. § 3.951, from reduction below that level. R. at 36. Upon administrative review of the matter in June 1990, the Regional Office acknowledged that the rating board's decision to lower the veteran's rating to 0% was clear and unmistakable error, and it assigned a rating of 10% from June 1, 1990, an action which still constituted a reduction from the 20% rating in existence since 1984. R. at 38–39. This change in the rating for the veteran's left leg disability did not affect the reduction in the veteran's combined rating from 80% from 1984 to 60% from 1990. R. at 40.

## II. ANALYSIS

■ In its decision affirming the Rating Board's reductions in the veteran's ratings, the BVA discussed only the January 1990 examination as the basis for the reductions. As this Court noted in *Schafrath v. Derwinski*, 1 Vet.App. 589 (1991), "[t]hat approach contravenes the clear mandate of the VA regulations which require that disability determinations be based upon the most complete evaluation of the claimant's condition that can feasibly be constructed." *Schafrath*, 1 Vet.App. at 594; 38 C.F.R. §§ 4.1, 4.2, 4.41, 4.42 (1991). In addition, the Court noted in *Schafrath:*

These requirements for evaluation of the complete medical history of the claimant's condition operate to protect claimants against adverse decisions based on a single, incomplete or inaccurate report and to enable VA to make a more precise evaluation of the level of the disability and of any changes in the condition. *See* 38 C.F.R. §§ 4.2, 3.344(a). These concerns are especially strong in a rating reduction case such as this. *See Peyton [v. Derwinski,* 1 Vet.App. 282] at 286–87,

38 C.F.R. § 3.344(a). Whether or not a disability has improved cannot be determined without reference to prior records detailing the history of the condition. *See Karnas v. Derwinski,* 1 Vet.App. 308, 310–11 (1991).

*Schafrath,* 1 Vet.App. at 594.

Section 3.344(a) of the regulations provides in pertinent part that *"[r]atings on account of diseases subject to temporary or episodic improvement ... will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated."* (Emphasis added.) Section 3.344(c) provides that paragraph (a) applies to "ratings which have continued for long periods at the same level (5 years or more)." Prior to the rating decision that reduced the veteran's evaluations for his brain syndrome and leg condition as of June 1, 1990, the higher ratings had been in effect since June 1, 1984, or for more than five years. "Such disabilities are considered 'stabilized', and the regulation thus requires a high degree of accuracy in decisions reducing those ratings." *Schafrath,* 1 Vet.App. at 594.

With regard to Mr. Maragni's brain syndrome, the BVA concluded that there was "overall material improvement in [the veteran's] service-connected psychiatric disability" which warranted the reduction in the rating. In finding "overall material improvement", the BVA discussed only the medical examination of January 1990 without comparison to prior reports of the veteran's condition or without consideration of "all the evidence of record" or even of evidence since 1984, the time that the veteran's prior ratings were assigned.

Moreover, as to the question of sustained improvement, the BVA did not comment on a comparison made by the veteran's representative between the 1990 VA examination and one completed in 1988 which was not in the record before this Court. The veteran claimed that such a comparison does not reveal the requisite sustained improvement; rather, the veteran noted that in 1988, he did not require psychiatric care

on a regular basis whereas more recently he was undergoing treatment and receiving medication at a mental health clinic for depression, nervousness, restlessness, nightmares and inability to sleep. R. at 34, 37. Moreover, the veteran claimed that on January 10, 1990, the VA neurologist prescribed medicine for his recurring headaches and that on January 24, 1990, again at a VA facility, he underwent an electroencephalogram (EEG), the results of which he was told were abnormal, although follow-up tests were never administered to confirm or deny the abnormality. R. at 25, 34.

With regard to the reduced rating for the veteran's left leg disability, the BVA noted that the veteran "did not have significant neurologic deficits or muscle weakness of the left lower extremity, and his gait was normal", and that it was the opinion of the Board "that the medical evidence, in totality, reveals that there has been sustained improvement in his left lower extremity hemiparesis, and that the symptomatology does not reflect more than mild impairment of the sciatic nerve." BVA Decision at 5. However, "the medical evidence, in totality" appears to consist solely of the January 1990 examination because the BVA did not mention any other medical reports describing the condition of the veteran's leg.

■ In the motion for summary affirmance before this Court, the Secretary quotes the statutory provision codifying the doctrine of reasonable doubt which provides that the doctrine "is not a means of reconciling actual conflict or a contradiction in the evidence; the claimant is required to submit evidence sufficient to justify a belief in a fair and impartial mind that the claim is well grounded." 38 U.S.C. § 5107(b) (formerly § 3007(b)). The Secretary observes that the veteran submitted no evidence to rebut the VA's rating action, despite his claims of receiving treatment at a mental health clinic. The Secretary implies that the veteran has not submitted a well grounded claim by merely asserting that his treatment at the mental health clinic demonstrates the lack of "sustained improvement" in his condition required by

§ 3.344(a) to warrant reduction in his rating. However, in *Murphy v. Derwinski*, 1 Vet.App. 78 (1990), this Court held that a "well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden ..." *Murphy*, 1 Vet.App. at 81; 38 U.S.C. § 5107(a) (formerly § 3007(a)). Here, the veteran's claim is well grounded because it is plausible and is capable of substantiation by records of the veteran's treatment at the mental health clinic. It is this well grounded claim to which the Secretary's duty to assist attaches.

■ The Department of Veterans Affairs has a statutory duty to assist the veteran in developing the facts pertinent to his claim. 38 U.S.C. § 5107(a) (formerly § 3007(a)); *Littke v. Derwinski*, 1 Vet.App. 90 (1990). That duty includes assisting the veteran in obtaining both government and private medical records. *Murphy*, 1 Vet. App. at 82. *See also Littke*, 1 Vet.App. at 91–92. Therefore, it was the responsibility of the VA, not the veteran, to obtain records from the mental health clinic and any other records necessary to the development of facts pertinent to the veteran's claim. In this case, it appears that all the medical facilities at which the veteran sought treatment were VA facilities and that therefore the records involved here are VA records and thus readily available to the Secretary.

■ Finally, in correspondence with the VA regarding his claim, Mr. Maragni alleged that his hearing and vision have worsened, and he identified medical facilities where he had sought treatment for his ears and eyes on several occasions since March 1988. R. at 2–6, 25. Such allegations give rise to the VA's duty to assist the veteran by scheduling an examination to determine whether these conditions have worsened, yet there is no evidence that a physical examination was performed, and the BVA did not address the veteran's allegations in its decision. In this respect also, the VA failed in its duty to assist the

veteran. *See Akles v. Derwinski,* 1 Vet. App. 118 (1991); *Littke,* 1 Vet.App. at 92.

Based upon the foregoing considerations, the Court finds that this case is appropriate for summary disposition because the case is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). Although generally such cases result in memorandum decisions of this Court that are brief, and it is the responsibility of the Court to render concise and coherent decisions whenever possible—the most important ingredient in a recipe for summary dispositions being plenty of shortening— occasionally a case presents matters that, although simple and not debatable in their resolution, require the Court to provide instructions or examples that result in a more detailed decision. Therefore, upon consideration of appellee's motion for summary affirmance, appellant's informal brief, and a review of the record, it is the holding of the Court that appellee's motion is DENIED, the decision of the BVA is VACATED, and the case is REMANDED for further development consistent with this decision.