**Gary W. HALL, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 91–505.**

United States Court of Veterans Appeals.

Aug. 24, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, veteran Gary W. Hall, appeals from a November 27, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for an anomaly of the thoracic spine at the T3–4 vertebrae. The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). Because the Court finds that the Board failed to provide an adequate statement of the reasons or bases for its findings and conclusions, the Secretary's motion will be denied, the Board's decision vacated, and the matter remanded.

The veteran served on active duty in the United States Air Force from March 1969 to January 1973. R. at 1. In November 1969, the veteran injured his back when moving a jet engine part. R. at 8–9. An X ray taken following this incident revealed degenerative disk disease affecting the T4–5 region. R. at 8–9. The veteran made subsequent complaints of back pain while in service, and treatment of those complaints confirmed this initial diagnosis. R.

at 10–16. In September 1988, the veteran applied to the Veterans' Administration (now Department of Veterans Affairs) (VA) for service-connected disability compensation for upper back and left-shoulder pain and for residuals of an in-service surgery on an ingrown toenail on his left foot. R. at 39–42. *See* R. at 21–24, 26–29. In February 1989, the VA conducted a compensation and pension physical examination. R. at 45–46. X rays of the veteran's back indicated an anomaly at the T3–4 vertebrae and T4–5 disk space narrowing. R. at 47. Although the examining physician's diagnosis did not distinguish among different vertebrae, the VA Regional Office (RO) decided to bifurcate the veteran's general claim for upper back pain, apparently based on the X rays, and evaluated the T3–4 region and the T4–5 region separately. Thus, in its March 1989 rating decision, the RO granted noncompensable service connection for the veteran's traumatic disk disease at the T4–5 vertebrae but denied service connection for the anomaly of the T3–4 vertebrae. R. at 49–50. (In that decision, the RO also granted noncompensable service connection for post-surgical removal of his left great toenail and denied service connection for the veteran's complaints of left-shoulder pain. R. at 49–50.) In his Form 1–9 appeal to the BVA, the veteran challenged the noncompensable rating of his T4–5 degenerative disk disease and the denial of service-connected disability compensation for the anomaly at T3–4. R. at 68–70. In its November 1990, decision, the BVA increased to 10% the veteran's service-connected disability rating for his T4–5 degenerative disk disease but denied service connection for the T3–4 anomaly because it found no evidence in the veteran's service medical records to indicate the disorder had been incurred in or aggravated by service. *Gary W. Hall,* BVA 90–40393, at 4–5 (Nov. 27, 1990). On his timely appeal to this Court, the veteran challenges the decision only as to the T3–4 anomaly.

■ A claimant for VA benefits has an initial burden to present evidence "sufficient to justify a belief by a fair and impartial individual that the claim is well ground-

ed." 38 U.S.C. § 5107(a) (formerly § 3007). Once that initial burden is met, "[t]he Secretary shall assist such a claimant in developing the facts pertinent to the claim". 38 U.S.C. § 5107(a). The Secretary's duty to assist the claimant does not arise until the claimant presents a well-grounded claim. *Gilbert v. Derwinski*, 1 Vet.App. 49, 55 (1991) (38 U.S.C. § 5107 establishes "chronological obligations"); *Murphy v. Derwinski*, 1 Vet.App. 78, 80–81 (1990). Consequently, the BVA may conclude that there is no duty to provide assistance to the claimant if it determines "that a claim was not well grounded, that the claimant did not or could not meet the initial burden imposed by [§ 5107(a) ]". *Murphy*, 1 Vet. App. at 81. But "[s]uch a conclusion, . . . must be supported by 'a written statement of . . . the reasons or bases for those findings and conclusions.' ". *Ibid.* (quoting 38 U.S.C. § 7104(d)(1) (formerly § 4004)). Furthermore, *Godwin v. Derwinski*, 1 Vet. App. 419, 425 (1991), states:

> Inherent in the duty-to-assist obligation . . . is a requirement for the Secretary to respond to the claimant's request for VA assistance one way or the other. If the VA turns the request down because it finds that the requested information is not relevant or that the claim is not well grounded . . ., then the claimant will have the opportunity to try to convince VA that the information he seeks is relevant or that the claim is well grounded, or to submit other evidence in the alternative.

█ In this case, it is unclear whether the Board's conclusion denying service connection for the anomaly at T3–4 was based on a finding that the veteran had not presented a well-grounded claim, or on a finding that the claim was well grounded but that the evidence in the record was insufficient to support the claim. In part, this ambiguity regarding the basis for the Board's conclusion arises from the unique posture of the claim. The veteran did not distinguish among different vertebrae in his original claim; the RO split the claim based on its reading of the physical examination findings. In addition, events following the veteran's request, in his informal hearing on November 28, 1989, for another physical examination to determine the etiology and possible service connection of the T3–4 vertebrae anomaly, as well as the exact level of his service-connected disability at T4–5, also cloud the issue of whether the veteran's claim with respect to the T3–4 vertebrae was considered to be well grounded. R. at 78. The December 1989 physical examination, which was conducted in response to the veteran's request, provided only a diagnosis for the T4–5 area. R. at 83. The veteran's representative highlighted this discrepancy and renewed the request for an opinion as to the etiology of the T3–4 anomaly. R. at 89. The only VA response to this request, however, was a terse note from the Hearing Officer, who provided his own, unsubstantiated conclusion as follows: "The anomaly at T3 in and of itself is not a rateable entity." R. at 90. In its November 27, 1990, decision, the Board simply stated that the evidence in the record did not establish service connection for the T3–4 anomaly, but it did not address the apparent discrepancy between the physical examination requested by the veteran and the limited diagnosis provided.

The Court holds that the Board's failure to explain its implicit decision not to provide the scope of physical examination and diagnosis requested by the veteran to discover the etiology of the anomaly at T3–4, is a failure to provide an adequate statement of the reasons or bases for its findings and conclusions. *See* 38 U.S.C. § 7104(d)(1); *Hanson v. Derwinski*, 1 Vet. App. 512, 518 (1991); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 168 (1991); *Sammarco v. Derwinski*, 1 Vet.App. 111, 113 (1991); *Gilbert*, 1 Vet.App. at 56–57. Given the unusual context of the T3–4 vertebrae claim, the Court considers it more prudent for the Board to address the claim's well groundedness rather than deciding that issue in this appeal. Therefore, just as in *Godwin* and *Murphy*, the Court remands for a fuller articulation of the Board's reasons or bases, which should include an evaluation of whether the claim is well grounded.

Consequently, on remand, if the Board concludes that the veteran did not present a well-grounded claim, it must provide reasons or bases for this conclusion. *See* 38 U.S.C. § 5107(a); *Murphy,* 1 Vet.App. at 81 ("well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation"); *Godwin, supra.* If, however, the Board concludes that the veteran did present a well-grounded claim, then the Secretary has a duty to assist the veteran, pursuant to 38 U.S.C. § 5107(a), in developing the facts pertinent to his claim and should conduct "a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability is a fully informed one." *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991); *see Wilson v. Derwinski,* 2 Vet.App. 16, 21 (1991); *Parker v. Derwinski,* 1 Vet.App. 522, 526 (1991); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *EF v. Derwinski,* 1 Vet. App. 324, 326 (1991). *See also* 38 C.F.R. §§ 4.1 (1991) (application of rating schedule requires accurate and fully descriptive medical examinations), 4.2 (1991) (when examination report contains insufficient detail, rating board must return the report as inadequate for evaluation purposes), 19.182 (1991) (remand required for correction of procedural defect essential for proper appellate decision); *Schafrath v. Derwinski,* 1 Vet.App. 589, 595 (1991); *Green, supra.* (remand required where record before BVA is inadequate); *Littke v. Derwinski,* 1 Vet. App. 90, 93 (1990).

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's brief, the Court holds that the Board has failed to provide, pursuant to 38 U.S.C. § 7104(d)(1) and the analysis in *Gilbert,* an adequate statement of the reasons or bases for its decision. Accordingly, the Court vacates the November 27, 1990, decision and remands the matter to the Board for prompt readjudication and disposition in accordance with this decision. The Court expects critical reevaluation to occur on remand, in which the Board will reexamine the evidence of record, seek appropriate additional evidence, and issue a well-supported decision. *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). On remand, the veteran will be free to present additional evidence and argument. A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new BVA decision is mailed to the appellant.

VACATED AND REMANDED.