**John L. DUNSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 91–800.

United States Court of Veterans Appeals.

March 4, 1993.

Barry P. Steinberg and Jayson L. Spiegal, Washington, DC, were on the brief, for appellant.

James A. Endicott, Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Leonard J. Selfon, Washington, DC, were on the brief, for appellee.

Before FARLEY, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge:

John L. Dunson appeals from a January 23, 1991, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for an effective date earlier than November 2, 1989, for service connection for post-traumatic stress disorder (PTSD) and residuals of frostbite of the feet. Both parties have filed briefs in this case. The Court has jurisdiction over the case under 38 U.S.C.A. § 7252(a) (West 1991). Because the Court holds that the BVA did not address all issues raised by the veteran in his substantive appeal to the Board, the Court vacates the decision of the BVA and remands the case for readjudication consistent with this opinion.

## FACTS

The veteran served honorably in the United States Army during World War II from November 1942 to January 1947. R. at 1–2, 4. From December 1944 to April 1945, the veteran was held as a prisoner of war (POW) in Germany. R. at 7, 28. On November 1, 1989, the veteran submitted a claim to the Department of Veterans Affairs (VA) Regional Office (RO or VARO) in Montgomery, Alabama, for service connection "for diabetes, PTSD, hearing, eyes, feet and legs, and bladder tumor." R. at 13–14, 19. The veteran enclosed with his claim copies of two postcards that he had received in the early 1950s from the War Claims Commission which verified that the Commission had received the veteran's claim "for compensation for forced labor and/or inhumane treatment as a prisoner of war." R. at 17–18. On April 19, 1990, the RO rating board granted service connection for PTSD, rated as 50%, and residu-

als of frostbite, both feet, rated as 10%, effective November 2, 1989, but the rating board rejected the claims for the other ailments on the grounds that there was no evidence that they were incurred in service. R. at 19–20.

In June 1990, the veteran filed a Notice of Disagreement (NOD) with the April 19, 1990, rating decision, requesting an earlier effective date back "to 1969 which was the year in which I first attempted to file for POW Status through the VA and obtain medical assistance from the VA Medical Center [VAMC] in Birmingham and was turned down on both counts because no one believed that I was an Ex–POW." R. at 22. The veteran also sent the VA a newspaper article about his having not been recognized as a POW by the Army for forty-six years after the war. R. at 24–25. The article described as follows: Upon returning to the United States after being released by the Germans in 1945, the veteran and a group of fellow POWs were sent to Miami for thirty days' recuperation. However, because the veteran is a black man, he was not permitted to stay in the motel that the Army had reserved for the men. Thus, the veteran was shuttled to Fort Jackson, South Carolina, then to Camp Blanton, Florida, and then to Fort McClellan, and during this period all of his records were lost or destroyed. As a result, his discharge papers did not reflect his POW status. The veteran claimed that he had tried to convince the VA that he had been a POW but that no one took him seriously. In 1989, the veteran's wife discovered in their home the postcards that the veteran had received in the early 1950s from the War Claims Commission; the cards had numbers printed on them which identified the veteran as a POW. The veteran's discharge papers were revised, and he subsequently received the POW medal. R. at 24–25.

Upon receipt of the veteran's NOD, the VA sent the veteran a Statement of the Case dated July 11, 1990 (R. at 26–31), and the veteran filed a VA Form 1–9 substantive appeal to the BVA dated August 14,

1990. R. at 33–34. On his VA Form 1–9, the veteran stated,

> [I]n 1969, I attempted to file a claim and obtain medical assistance through the VA Medical Center in Birmingham, Al[abama]. I was turned down on both counts because no one believed I was an EX–POW. No one attempted to help me or believe me. They could not believe a black man could be an EX–POW. After I left the service I was moved from place to place by the Army. Some places they sent me, I was not allowed to stay because of my color. Therefore, I was shipped to several places. I feel during this time my military records were misplaced and that created problems for me when I did attempt to file. I do not know what happened to my records, but it was not my fault that I was shipped all over by the Army.... If the EX–POW status was not passed until 1981, then at least consideration should be given for adjustment of compensation to the effective date in 1981.

R. at 33–34.

On October 10, 1990, a hearing was held at the RO in Montgomery, Alabama, where the veteran testified under oath that he had sought medical care in 1969 at the VAMC in Birmingham, and that a VAMC employee, who was filling out forms for the veteran, tore up the veteran's paperwork when the veteran told him he had been a POW. R. at 35. The veteran further testified that the employee stated, "[I]f you was [sic] a Prisoner of War, I was a general of the Army," and threw the paperwork in the trash can. *Id.* The Hearing Officer explained to the veteran that the VAMC and the RO are "[two] different operations" and that "no matter what they told you at the [VAMC] you still had a right to file a claim for benefits which would come through the [RO]." R. at 38. Furthermore, the Hearing Officer informed the veteran that "the application for medical treatment had nothing whatsoever to do with an application for benefits" and that, although "the [VAMC] has complete jurisdiction over your application for medical treatment, ... if you want to apply for [compensation or pension] the application

must come to the [RO], and [the RO] did not receive an application until November ... [19]89." *Id.*

On January 23, 1991, the BVA denied the veteran's claim for an earlier effective date, noting that, although the evidence reflected that the veteran had made a claim for compensation to the War Claims Commission, the Commission was an independent organization not affiliated with the VA, and the veteran's claims to the Commission cannot be construed as claims for benefits from the VA. *John L. Dunson,* BVA 91–02246, at 4 (Jan. 23, 1991). In addition, the Board noted that "[t]here is no documentation of a claim for compensation or benefits from the veteran prior to the claim received November 2, 1989." *Id.* The veteran filed a timely appeal to this Court.

## ANALYSIS

█ The veteran argues in his brief that the Board erred in not considering the veteran's attempt to obtain assistance from the VAMC in 1969 as an informal claim for benefits under 38 C.F.R. § 3.155. Appellant's Br. at 7–8. Section 3.155 provides in part,

> (a) Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by the Department of Veterans Affairs, from a claimant ... may be considered an informal claim. Such informal claim must identify the benefit sought.

38 C.F.R. § 3.155 (1992). In his appeal to this Court, the veteran counterdesignated the record on appeal with VA Form 10–7131, Exchange of Beneficiary Information and Request for Administrative or Adjudicative Action, dated in October 1969. R. at 5. With regard to this form, the Secretary of Veterans Affairs (Secretary) argues,

> This form is designed for use by VA medical centers, outpatient clinics, and regional offices for the exchange of information, or to request administrative and adjudicative action relating to or required by a veteran's status when apply-

ing for or receiving hospital or other medical services. [Citation omitted.]

In this case the form reflects that on October 11, 1969, the veteran sought admission to the VAMC. The VAMC requested information from the VARO concerning the veteran's file number, whether he was receiving any monetary benefits, or whether he was service-connected for any disorders. In reply, and on the same form, the VARO indicated that the veteran was not on the record as service-connected, nor had there been any claims filed by the veteran for either compensation or pension.

This document does not reflect the nature of the medical treatment sought. It does not describe the medical services rendered, if any. It does not identify any benefit sought by the veteran; indeed, it in no way reflects that the veteran was seeking to apply for disability compensation. In short, it is an internal VA administrative information-gathering mechanism and may not be construed as a claim for entitlement to service connection for PTSD or residuals of frostbite of the feet, informal or otherwise.

Secretary's Br. at 12–13. In addition, the Secretary points out that, notwithstanding appellant's contention that he attempted to file a claim for benefits for his current service-connected disorders when he visited the VAMC in 1969, the veteran "indicated on his November 1989 application for benefits that he had never previously applied for disability compensation or pension with the VA." Secretary's Br. at 14 (citing R. at 13). Finally, the Secretary observes that the veteran "stated on the application that when he sought treatment at the VAMC in 1969, it was for a stomach disorder." Secretary's Br. at 14; R. at 15.

To the contrary, appellant states in his brief, "Mr. Dunson presented sufficient information to the VA representative in Birmingham that he may have suffered from a service connected injury, as evidenced by the inquiry as to service connection, to trigger the obligation of the VA to assist the applicant." Appellant's Br. at 8. Furthermore, with regard to the comments of the Hearing Officer that the VAMC and the RO are separate operations, each with its own jurisdiction, appellant asserts that such an argument that the two institutions "are so distinct that the VA's duty to assist the veteran did not arise violates the legal obligation of the VA to assist Mr. Dunson." Appellant's Br. at 9.

The Court observes not only that the record lacks evidence to corroborate appellant's assertion that he sought more than medical treatment from the VAMC in October 1969, but also that, even if it could be assumed that the veteran attempted to file a claim for benefits in 1969, there is no evidence in the record that specifically identifies "the benefit sought," as is required by the regulation to constitute an informal claim.

■ With regard to appellant's argument that the VA failed in its duty to assist the veteran in making a claim for benefits in 1969, the Court notes that the statutory duty to assist is triggered by the filing of a well-grounded claim for benefits, and, because there is no evidence in the record that the veteran filed a well-grounded claim in 1969, the VA was not under an obligation in 1969 to assist the veteran in developing his claim. 38 U.S.C.A. § 5107 (West 1991); *Murphy v. Derwinski*, 1 Vet. App. 78, 81 (1990); *Tirpak v. Derwinski*, 2 Vet.App. 609, 610–611 (1992).

■ However, the Court holds that the VA was obligated to assist the veteran with respect to his current well-grounded claim for an earlier effective date. Therefore, with regard to the veteran's statement on his VA Form 1–9 that "[i]f the EX–POW status was not passed until 1981, then at least consideration should be given for adjustment of compensation to the effective date in 1981," the Court notes that a liberal reading of issues raised in this substantive appeal should have prompted the BVA to consider whether the veteran was granted benefits pursuant to the Former Prisoner of War Benefits Act of 1981, Pub.L. No. 97–37, 95 Stat. 935 (1981), and, if so, whether he was entitled to an effective date at least one year prior to the receipt of his claim by the VA, pursuant to

the provisions of 38 C.F.R. § 3.114 which provide,

> (a) *Effective date of award.* Where pension, compensation, or dependency and indemnity compensation is awarded or increased pursuant to a liberalizing law ... the effective date of such award or increase shall be fixed in accordance with the facts found, but shall not be earlier than the effective date of the act.... In order to be eligible for a retroactive payment under the provisions of this paragraph the evidence must show that the claimant met all eligibility criteria for the liberalized benefit on the effective date of the liberalizing law ... and that such eligibility existed continuously from that date to the date of claim....

> ....

> (3) If a claim is reviewed at the request of the claimant more than 1 year after the effective date of the law ... benefits may be authorized for a period of 1 year prior to the date of receipt of such request.

38 C.F.R. § 3.114(a)(3) (1992); *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991) ("[T]he BVA must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal"); *see also EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *Mingo v. Derwinski,* 2 Vet. App. 51, 54 (1992). Accordingly, we vacate the decision of the BVA and remand the case for consideration of this matter. Upon readjudication, the Board shall provide the veteran with reasons or bases for its decision in compliance with its statutory obligation under 38 U.S.C.A. § 7104 (West 1991) and consistent with the standard articulated by this Court in *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). On remand, appellant will be free to submit additional evidence and argument on the issue at hand. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992).

### CONCLUSION

For the reasons stated above, the January 23, 1991, decision of the BVA is VA-CATED and the case REMANDED for readjudication consistent with this opinion.