Citation Nr: AXXXXXXXX
Decision Date: 09/29/21 Archive Date: 09/29/21

DOCKET NO. 200207-61572
DATE: September 29, 2021

ORDER

A total rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU) is granted. 

Entitlement to a separate compensable rating on and after February 1, 2014, for right carotid artery stenosis with endarterectomy residuals is denied. 

REMANDED

1. Entitlement to an effective date prior to December 4, 2019, for the award of service connection for benign paroxysmal positional vertigo is remanded. 

2. Entitlement to an initial rating in excess of 10 percent for benign paroxysmal positional vertigo is remanded. 

3. Entitlement to an initial compensable rating for post-operative superficial cutaneous nerve injury residuals with right neck and jaw numbness is remanded. 

4. Entitlement to special monthly compensation at the housebound rate on and after February 1, 2014, is remanded. 

FINDINGS OF FACT

1. Service connection has been established for dyshidrotic eczematous dermatitis rated as 60 percent disabling; neck scar residuals rated as 50 percent disabling under 38 C.F.R. § 4.118, Diagnostic Code 7800 and 10 percent under 38 C.F.R. § 4.118, Diagnostic Code 7804; coronary artery disease rated as 10 percent disabling; benign paroxysmal positional vertigo rated as 10 percent disabling; psychomotor epilepsy rated as 10 percent disabling; tinnitus rated as 10 percent disabling; post-operative superficial cutaneous nerve injury residuals with right neck and jaw numbness; right carotid artery stenosis endarterectomy and residuals rated as non compensable; and bilateral hearing loss rated as non compensable. The combined service-connected disability rating is 90 percent. 

2. The service-connected disabilities are of such severity as to preclude the Veteran from securing and following substantially gainful employment consistent with his education and work experience. 

3. The diagnosed right carotid artery stenosis/carotid artery disease and coronary artery disease constitute the same disability. 

CONCLUSIONS OF LAW

1. The criteria for a TDIU have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16. 

2. A separate compensable rating for right carotid artery stenosis with endarterectomy residuals on and after February 1, 2014, may not be granted. 38 C.F.R. § 4.14. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from December 1960 to December 1984. He served in the Republic of Vietnam. 

In February 2020, the Veteran submitted a Decision Review Request: Board Appeal (Notice of Disagreement), VA Form 10182, and elected the Direct Review docket. Therefore, the Board of Veterans' Appeals (Board) may only consider the evidence of record at the time of the Agency of Original Jurisdiction decision on appeal. 38 C.F.R. § 20.301.

The Veteran submitted additional lay evidence with the February 2020 Decision Review Request: Board Appeal (Notice of Disagreement), VA Form 10182, and private treatment records which were received in July 2021. The Board may not consider this evidence. The Veteran may file a supplemental claim and submit or otherwise identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Specific instructions for filing a supplemental claim are included with this decision. 

In his February 2020 Decision Review Request: Board Appeal (Notice of Disagreement), VA Form 10182, the Veteran stated that he wished to be considered for a TDIU. When entitlement to a TDIU is raised during the adjudicatory process of evaluating the underlying disability or disabilities, it is part of the claim for benefits for the underlying disability or disabilities. Rice v. Shinseki, 22 Vet. App. 447, 454 (2009). Therefore, entitlement to TDIU is on appeal and will be addressed below. 

TDIU

Total ratings for compensation purposes may be assigned where the combined schedular rating for the service-connected disabilities is less than 100 percent when it is found that the service-connected disabilities are sufficient to make the veteran unemployable without regard to either advancing age or the presence of any nonservice-connected disabilities. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341.

Total ratings for compensation purposes are assigned where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. If there are two or more disabilities, there shall be at least one disability rated 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. The existence or degree of nonservice connected disabilities or previous unemployability status will be disregarded where the percentages for the service-connected disability or disabilities are met and in the judgment of the rating agency such service connected disabilities render the veteran unemployable. Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a). 

Service connection has been established for dyshidrotic eczematous dermatitis rated as 60 percent disabling, neck scarring as 50 percent disabling, psychomotor epilepsy as 10 percent disabling, tinnitus as 10 percent disabling, coronary artery disease as 10 percent disabling, neck scarring as 10 percent disabling, benign paroxysmal positional vertigo as 10 percent disabling, glossopharyngeal cranial nerve injury residuals as10 percent disabling, bilateral hearing loss as noncompensable, and right carotid artery disease as noncompensable. The Veteran has a combined 90 percent service-connected disability rating. Therefore, the Veteran meets the schedular criteria for consideration for TDIU. 38 C.F.R. § 4.16(a).

VA clinical documentation dated in 2014 indicates that the Veteran was not employed. 

In his February 2020 Decision Review Request: Board Appeal (Notice of Disagreement), VA Form 10182, the Veteran advanced that the service connected disabilities rendered him unemployable. He states that the service connected psychomotor epilepsy would cause most employers to decline to hire him. 

The service-connected disabilities have a combined 90 percent rating. The Veteran reported that he had not worked since 2014. The Veteran has presented persuasive arguments that the service-connected disabilities prevent him from finding or maintaining any form of substantially gainful employment. Accordingly, resolving reasonable doubt in favor of the Veteran, the Board of Veterans' Appeals (Board) finds that the service-connected disabilities alone cause the Veteran to be unable to secure or follow a substantially gainful occupation. Therefore, the claim for TDIU is granted. 38 C.F.R. § 4.16. 

Right Carotid Artery Stenosis 

The Veteran asserts that a separate compensable rating for right carotid artery stenosis with endarterectomy residuals on and after February 1, 2014, is warranted. 

In March 2014, the Agency of Original Jurisdiction granted service connection for coronary artery disease; assigned a 10 percent rating for that disability; and effectuated the award as of December 5, 2013. In July 2019, the Board granted service connection for right carotid artery disease. In December 2019, the Agency of Original Jurisdiction established service connection for right carotid artery stenosis with endarterectomy residuals and assigned a 100 percent rating from December 5, 2013, to January 31, 2014, and a noncompensable rating on and after February 1, 2014, for that disability. The Board notes that separate ratings of 50 percent and 10 percent have been assigned for the scar residuals associated with the endarterectomy residuals. 

A July 2014 written statement from D. Fornace, D.O., the Veteran's private physician, indicates that the Veteran "has required a carotid endarterectomy of which is directly correlated with his coronary disease and would go under the same title as ischemic vascular disease." The doctor clarified that "there is a question in regard to the patient's ischemic heart disease and cerebrovascular disease" and "cerebrovascular disease is the exact same entity as ischemic heart disease." 

The Board notes that the diagnoses of coronary artery disease and carotid artery disease/carotid stenosis represent the same disability. A 10 percent rating is currently in effect for coronary artery disease under the provisions of 38 C.F.R. § 4.104, Diagnostic Code 7005. An additional compensable rating therefore may not be assigned for that disability under the diagnosis of carotid artery disease/carotid stenosis. 38 C.F.R. § 4.14. Accordingly, the Veteran's claim for an additional compensable rating for right carotid artery stenosis with endarterectomy residuals must be denied. 

The Veteran has asserted that the disability should be rated by analogy to an aortic aneurysm under the provisions of 38 C.F.R. § 4.104, Diagnostic Code 7110. The Veteran does not allege and the record does not establish that an aneurysm of the aorta or any other large artery has been diagnosed or otherwise identified. The Board notes that such a rating by analogy would also be prohibited by application of 38 C.F.R. § 4.14. 

REASONS FOR REMAND

1. Entitlement to both an effective date prior to December 4, 2019, for the award of service connection for benign paroxysmal positional vertigo is remanded and an initial rating in excess of 10 percent for benign paroxysmal positional vertigo is remanded. 

The Veteran asserts that an effective date of December 5, 2013, for the award of service connection for benign paroxysmal positional vertigo is warranted as that is the effective date of the award of service connection for carotid artery stenosis with endarterectomy residuals. He contends that an initial 60 percent rating for the benign paroxysmal positional vertigo is warranted. 

VA should obtain all relevant private treatment records which could potentially be helpful in resolving the Veteran's claims. Murphy v. Derwinski, 1 Vet. App. 78 (1990); Bell v. Derwinski, 2 Vet. App. 611 (1992). 

The report of a December 2019 VA examination states that the Veteran reported that "in Spring 2019, he noted the sudden onset of dizziness when moving his head while lying in bed" and was diagnosed by his private physician with positional vertigo. Clinical documentation of the cited private treatment has not been requested for incorporation into the record. That is a pre decisional error. 

2. Entitlement to an initial compensable rating for post-operative superficial cutaneous nerve injury residuals with right neck and jaw numbness is remanded. 

The report of a December 2019 VA cranial nerve examination states that the Veteran was diagnosed with "a glossopharyngeal injury s/p right carotid endarterectomy." 

The report of a December 2019 VA peripheral nerve examination states that the Veteran was diagnosed with "a peripheral nerve condition" and "post-operative right sided neck/jaw numbness due to superficial cutaneous nerve injury." The examiner did not identify the specific cutaneous peripheral nerve involved. The Board observes that there are many cutaneous nerves in the human body, only some of which are named. 

VA's duty to assist includes, in appropriate cases, the duty to conduct a thorough and contemporaneous medical examination which is accurate and fully descriptive. McLendon v. Nicholson, 20 Vet. App. 79 (2006); Green v. Derwinski, 1 Vet. App. 121, 124 (1991). When VA undertakes to obtain an evaluation, it must ensure that the evaluation is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As it is unclear what specific cutaneous peripheral nerve injury was diagnosed at the December 2019 examination, the Board finds that further VA neurological evaluation is required. That is a pre-decisional error. 

3. Entitlement to special monthly compensation at the housebound rate on and after February 1, 2014, is remanded. 

The issue of entitlement to special monthly compensation at the housebound rate on and after February 1, 2014, is an ancillary benefit associated with the grant of a TDIU and the claims for increased ratings being remanded and therefore must also be remanded. 

The matters are REMANDED for the following action:

1. Ask the Veteran to complete a VA Form 21-4142 for the private healthcare provider who initially diagnosed him with positional vertigo in 2019. Make two requests for the authorized records from all identified healthcare providers unless it is clear after the first request that a second request would be futile. 

2. Schedule the Veteran for a VA neurological examination conducted by a physician to assist in determining the current severity of the service connected post-operative nerve injury residuals. The examiner must review the record and should note that review in the report. A rationale for all opinions should be provided. The examiner should:

(a) Identify all cranial and peripheral nerves involved by the service connected post-operative nerve injury residuals. If a cutaneous nerve injury is diagnosed, the examiner should state the specific cutaneous nerve affected. 

(b) Opine whether the Veteran's reported esophageal spasms and strictures are manifestations of the service connected post operative nerve injury residuals. 

 

 

 

J. T. HUTCHESON

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Thaddaeus J. Cox, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.